**Chloris Ann HUBBY as Executor of the Estate of Merlin Lee Hubby, Deceased, Appellant,**

v.

**STATE of Iowa, Appellee.**

No. 67572.

Supreme Court of Iowa.

March 16, 1983.

Kirke C. Quinn of Doran, Doran, Courter & Quinn, Boone, for appellant.

Thomas J. Miller, Atty. Gen., John R. Scott, Sp. Asst. Atty. Gen., and Jon K. Swanson, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, LARSON, SCHULTZ, and CARTER, JJ.

SCHULTZ, Justice.

This appeal involves issues arising from a wrongful death action commenced as a result of a motorcycle-automobile accident which claimed the life of plaintiff's decedent, Merlin Lee Hubby. Plaintiff, Chloris Ann Hubby, as executor of decedent's estate, brought an action against the State alleging that officers of the Iowa Highway Patrol were negligent in conducting a speed check and proximately caused the fatality. Following a trial to the court, the trial court found that the officers were negligent, but denied recovery because the decedent was contributorily negligent in failing

to maintain a proper lookout. Plaintiff appealed and the court of appeals held the trial court erred by using an incorrect test to determine proper lookout, and by considering certain expert witnesses' testimony concerning experiments and conclusions of law. It reversed and remanded to the trial court with instructions to reconsider the present record in conformance with its opinion. We granted the State's application for further review. We vacate the decision of the court of appeals and affirm the judgment of the trial court.

On the morning of August 24, 1979, three Highway Patrol officers were conducting a speed check on a portion of a four lane divided highway, U.S. 30, in Story County. The weather was clear and the sun was bright. From a patrol aircraft, officer David Reynolds clocked the speed of eastbound vehicles as they passed through timing lanes. He radioed the color and number of vehicles to be stopped to officers Gerald Skahill and Clay Frederick North, Jr. North and Skahill were standing on the highway about three-fourths of a mile east and beyond a major curve from the timing area. Their patrol cars were parked front-to-rear on the south shoulder of the highway and they received Reynolds' information through a loudspeaker located in one of the patrol cars.

Shortly before ten a.m. Reynolds radioed that a white car was to be stopped. North walked to the middle of the highway and waved the white car to the shoulder behind the patrol cars. While North was speaking to the driver, Reynolds radioed that an orange semi-truck was to be stopped. The semi was following a blue-over-white oldsmobile driven by Georgia Bozich (Bozich vehicle) and began to pull into the left lane to pass that car as they came alongside Skahill. Using one hand Skahill pointed upward to the semi driver, motioning him to the shoulder. With his other hand Skahill motioned Bozich to proceed. Both drivers testified they were confused by the signals. The semi, traveling about 30 miles per hour, completed its pass and pulled over to the south shoulder of the highway about 200 feet east of Skahill's patrol car. Before getting into his car, Skahill saw Bozich two car lengths ahead of his car and motioned to her to proceed. Skahill then moved his car up to the rear of the semi, passing Bozich on the way. He then got out of the car and met the semi driver at the rear of the semi. At that point he heard the motorcycles driven by Merlin Hubby and Brian Carrel.

Meanwhile, again responding to Reynolds, North had walked to the middle of the road to stop a red car. He saw the motorcycles approaching from the west pass him in the south lane. North directed the red car to a position behind the white car and walked back to the white car. He then heard a noise and turned around in time to see Hubby fly through the air over the Bozich vehicle after his motorcycle had struck the rear of that car.

The lead motorcycle, driven by the decedent, collided with the Bozich vehicle in the south lane of traffic parallel to the front axle of the semi. Immediately thereafter, Carrel, who was traveling behind Hubby, placed his motorcycle down and slid sideways on the highway until he came to rest near the point of the collision.

Conflicting testimony was given as to whether the Bozich vehicle had always proceeded forward, stopped, pulled off the shoulder, or had driven in reverse. Officer Reynolds testified that the Bozich vehicle may have stopped momentarily by the patrol cars, but he did not see it pull over. The driver of the white car stated that the Bozich vehicle was partially on the shoulder, and Carrel indicated the Bozich vehicle pulled in front of Hubby, presumably from the shoulder of the highway. Bozich testified she stayed in the south lane at all times until the collision and that her lowest speed was twenty miles per hour. An expert witness estimated it would have taken approximately twenty-seven seconds from the time the signals were given by Skahill until the collision occurred. This expert also testified that the Bozich vehicle could have been traveling in reverse at the time of impact.

The trial court found that plaintiff met her burden of showing that the patrol officers were negligent in the conduct of the speed check and that they violated their duty of care to decedent. The evidence amply supports this finding. Due to the close proximity of the officers, the number of vehicles, and the confusing hand signals, the scene bore an unfortunate resemblance to a three-ring circus.

The trial court also found that the State met its burden of showing that decedent was contributorily negligent in failing to keep a lookout. Plaintiff disputes this finding and assigns error on the following points: (1) the sufficiency of the evidence to support the finding of improper lookout, (2) a failure to find proximate cause, (3) the refusal to allow the officers to be examined as adverse witnesses, (4) the admission of expert testimony on required degree of care, (5) admission of opinion from an expert based on hypothetical question containing matters based on hearsay that were not in the record, and (6) admission of an experiment performed by the officers.

Prior to addressing the plaintiff's contentions, we must resolve the issue concerning lookout. On the lookout issue the court of appeals understood the plaintiff to claim that the trial court applied the wrong test for lookout in finding contributory negligence. Our review of the brief causes us to conclude that plaintiff confined her claim of error to the sufficiency of the evidence to support the court's finding. Plaintiff's brief raises only the sufficiency issue; there is no argument that the trial court applied the incorrect test. The brief point finally contends that "the record is absolutely void of any substantial evidence which would lead the trial court to come to the conclusion that the plaintiff's decedent failed to maintain a proper lookout." We must decide the propriety of expanding plaintiff's issue of insufficiency of the evidence to prove improper lookout to an issue that concerns the application of an incorrect test to determine improper lookout.

■ Appellate review of a trial court's ruling on a claim under the tort claims act is by determination of assigned errors at law. *Wernimont v. State,* 312 N.W.2d 568, 570 (Iowa 1981). On a review of a law action tried to the court, appellate review is not de novo, but is confined to errors assigned. *Carson v. Mulnix,* 263 N.W.2d 701, 705 (Iowa 1978); *Herman Ford-Mercury, Inc. v. Betts,* 251 N.W.2d 492, 493 (Iowa 1977); *Rector v. Alcorn,* 241 N.W.2d 196, 200 (Iowa 1976). Moreover, issues are deemed waived or abandoned when they are not stated on appeal by brief; random discussion of difficulties, unless assigned as an issue, will not be considered. Iowa R.App.P. 14(a)(3); *McCleeary v. Wirtz,* 222 N.W.2d 409, 415–17 (Iowa 1974).

As the plaintiff failed to raise an issue concerning the trial court's application of the proper test for lookout, we shall not consider the issue on appeal. We shall confine our review to the issue raised by the plaintiff.

I. *Lookout.* Plaintiff claims there was insufficient evidence to support the trial court's conclusion that decedent was contributorily negligent in failing to maintain a proper lookout. We disagree.

■ Findings of fact in a law action are binding upon the appellate court if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We must construe the evidence in the light most favorable to the trial court's judgment, and this court will not weigh the evidence or pass on the credibility of witnesses. A finding of fact is supported by substantial evidence if the finding may be reasonably inferred from the evidence. *Briggs Transportation Co. v. Starr Sales Co.,* 262 N.W.2d 805, 808 (Iowa 1978).

■ The trial court correctly stated the standard of proper lookout when it relied on the following quotation:

The duty to maintain a proper lookout implies being watchful of the movements of the driver's vehicle in relation to other things seen and which could be discerned or seen in the exercise of ordinary care. It requires the care, watchfulness and attention of the ordinarily prudent person

in the circumstances. *Bradt vs. Grell Construction, Inc.,* 161 N.W.2d 336, 341 (Iowa 1968).

The testimony and circumstantial evidence provide ample support for the trial court's finding. The weather was clear and Hubby had an unobstructed view of the roadway. Hubby did not apply his brakes. Bozich testified she was at all times on the highway and the officers' testimony was to the same effect. While we might wish to dispute the credibility of some of the witnesses and give little weight to their testimony, we may not invade the function of the trial judge. There is ample evidence that decedent did not exercise ordinary care by being reasonably watchful and attentive when he proceeded past patrolman North and drove into the rear of the Bozich vehicle. Accordingly, we find substantial evidence that decedent failed to maintain a proper lookout.

■ II. *Proximate cause.* Plaintiff contends that the trial court erred in failing to set out in a separate finding of fact the determination of the proximate cause of the collision. She claims it may be inferred that the trial court found that the State's negligence was a proximate cause in order to have proceeded to consider decedent's contributory negligence. She complains that the trial court overlooked the issue of proximate cause concerning the issue of decedent's contributory negligence. We find this contention is without merit.

■ Although the trial court did not make a specific finding of fact concerning the proximate cause, it may be inferred that the trial court found that decedent's contributory negligence was a proximate cause of both the collision and his death. Findings of fact are given a liberal construction favorable to the judgment. *Bahnsen v. Rabe,* 276 N.W.2d 413, 415 (Iowa 1979). Any ambiguity in the trial court's finding is decided in favor of the judgment. *Eldridge v. Herman,* 291 N.W.2d 319, 321 (Iowa 1980). Because no motion for enlargement of finding was made under Iowa R.Civ.P. 179(b), we assume as fact an unstated finding that is necessary to support the judgment against plaintiff. *Eldridge,* 291 N.W.2d at 321. The trial court made it clear that the State had the burden to prove decedent's contributory negligence and that such negligence was a proximate cause of the damages. The court found the State met the burden of proof on contributory negligence, and with the denial of recovery we may assume the finding of proximate cause that is consistent with the judgment.

■ III. *Examination of Officers North and Skahill.* Plaintiff asked to be allowed to question officers North and Skahill as adverse witnesses pursuant to Iowa Code section 624.1. The court refused and plaintiff contends this refusal was error.

Section 624.1 provides:

A party may interrogate any unwilling or hostile witness by leading questions. A party may call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party ...

Officers Skahill and North are not officers, directors, or managing agents of a public or private corporation, partnership, or association which is an adverse party. If we find for the plaintiff, "we would necessarily amend the statute by adding another class of witness the legislature did not include." *Wong v. Waterloo Community School District,* 232 N.W.2d 865, 869 (Iowa 1975).

The officers do not qualify to be treated as adverse witnesses under section 624.1. Alternately, plaintiff requests this court to adopt the language of Fed.R.Evid. 410. Rule 410 allows leading questions to be asked of a "witness identified with an adverse party." We need not reach this issue as plaintiff did not preserve it for this appeal. Plaintiff limited her request of the trial court to an examination of the witnesses pursuant to section 624.1.

■ IV. *Testimony of Dr. Beno.* Dr. John A. Beno, a professor who provides instruction in motorcycle safety at Iowa

State University, had been listed as an expert witness by the State. When the State did not produce him at trial, plaintiff offered certain portions of his deposition. Then the State offered further portions that included the following:

Q. [Is there a] rule of the road?

A. There is an operational rule as far as motorcycle riding goes.

Q. And what is that?

A. Again, placement of the vehicle from the hazard as far as you can get in the riding environment that you're in.

Plaintiff objected on the ground "that the answer elicits an opinion which would require the decedent to assume a duty greater than that created by the laws of the State of Iowa for the operation of his vehicle." Plaintiff further claims that she was prejudiced by the court's reliance on Dr. Beno's testimony as evidenced by this statement:

The primary concern of the troopers should be the safety of vehicles traveling on the highway, and in [Dr. Beno's] opinion, although the Bozich vehicle was a hazard on the highway, the fault for the accident which took the life of plaintiff's decedent cannot be attributed solely to the troopers.

Moreover, the trial court stated incorrectly that Dr. Beno was an accident reconstructionist.

We assume, without deciding, that the objection was sufficient to alert the trial court that the answer required the witness to render a legal opinion and should not have been admitted. Nevertheless, we do not believe the admission was reversible error.

We find the record affirmatively shows plaintiff could not have been prejudiced by admissibility of this evidence. A review of the trial court's opinion shows us that the court's only reference to Dr. Beno's deposition is within its discussion of the State's negligence, not within the discussion of contributory negligence. Further, when the court assesses Hubby's conduct just prior to the accident, it lists the facts which it finds pertinent to its determination whether Hubby failed to keep a proper lookout.

There is no reference to the "rule of the road" in these facts, and there is no reliance on the "rule of the road" in the court's analysis of Hubby's contributory negligence. The finding of contributory negligence was based on failure of lookout, not breach of the alleged "rule of the road." Accordingly, finding no prejudice, we conclude that the court's admission of that portion of Dr. Beno's testimony is not reversible error.

V. *Hypothetical questions.* The State's expert witness, patrol sergeant Dewey Jontz, was allowed by the trial court to answer certain hypothetical questions over plaintiff's objection. Jontz testified about the speed, direction, and path of the Bozich vehicle. Plaintiff did not object to Jontz's qualifications, but claimed the hypothetical questions included facts based on hearsay not contained in the record. She also complained that the State's answers to her interrogatories did not properly disclose the substance of the expert testimony. We find no prejudicial error.

█ A. *Hearsay facts not in the record.* Jontz was allowed to answer a hypothetical question based on facts in a deposition. The deposition included statements fellow patrolmen made to Jontz concerning the speed of Bozich's vehicle and its location on the highway at the time Skahill drove on the shoulder. The same patrolmen testified at trial and their testimony varied slightly from the deposition. Plaintiff contends that the hypothetical question was improperly based on hearsay and matters outside the record.

█ The facts assumed in a hypothetical question must be supported by the evidence in the record. The question need not be established by direct testimony, however, but may arise as a fair inference from circumstantial evidence. *State v. Conner,* 241 N.W.2d 447, 460 (Iowa 1976). The form and content of a hypothetical question is largely within the discretion of the trial court, and we will not reverse a ruling unless such discretion is abused. *Hutchin-*

son v. Des Moines Housing Corp., 250 Iowa 1306, 1320, 99 N.W.2d 81, 89 (1959). There was other testimony concerning the speed and location of the Bozich vehicle. This testimony and the inferences from the circumstances present provided sufficient facts in the record to support the facts assumed in the hypothetical question. These other facts found in the record also provide grounds to dispose of plaintiff's hearsay claim. Here there are sufficient foundational facts in the record to justify the assumed facts without reliance on hearsay. We find no abuse of discretion in the ruling of the trial court.

■ B. *Improper disclosure.* In an answer to an interrogatory directed to the nature of the State's expert testimony, the State indicated that Jontz would give facts and opinions as elicited in a pretrial deposition. In its hypothetical questions concerning the speed, position, and path of the Bozich vehicle, plaintiff argues that she was misled because the State departed from the deposition. She maintains that due to the failure of the State to supplement its deposition, the court erred in admitting the testimony over her timely objection. We disagree.

■ The party responding to an interrogatory has a duty to supplement a response to include information obtained thereafter concerning the identity, subject matter, and substance of testimony of an expert witness. Iowa R.Civ.P. 125(a)(2). The trial court possesses inherent power to enforce the discovery rules and may impose sanctions for a litigant's failure to obey them, including the exclusion of the testimony. *White v. Citizens National Bank of Boone,* 262 N.W.2d 812, 816 (Iowa 1978). On review we only reverse for an abuse of discretion. *Id.* We find an abuse of discretion when such discretion is exercised on grounds or for such reasons clearly untenable or to an extent clearly unreasonable. *State v. Morrison,* 323 N.W.2d 254, 256 (Iowa 1982).

The trial court's admission of the challenged testimony was clearly defensible and reasonable. The questions concerning the Bozich vehicle's speed and location at the time Skahill drove on the shoulder are closely allied with the deposition testimony. We would be too fastidious if we would decide that the trial court was unreasonable in allowing facts in the record on the same subject to be considered in rendering the opinion. The deposition contained testimony concerning Jontz's opinion about the path of the Bozich vehicle. The trial court's rulings were tenable and reasonable. We find no abuse of discretion.

■ VI. *Experiment evidence.* Plaintiff maintains that the trial court erred in admitting over objection testimony concerning an experiment. She acknowledges that the admission of experiments is within the sound discretion of the court. *Althof v. Benson,* 259 Iowa 1254, 1257, 147 N.W.2d 875, 876 (1967). We find no abuse of discretion.

Two days after the incident, officers Skahill and North performed an experiment to determine whether the Bozich vehicle would have been lost in the shadow of the semi. At approximately the same time of day in clear weather they went back to the same location, pulled over a semi that was going by, and parked him in the exact position where the orange semi had been parked. Using a motorcycle smaller than Hubby's motorcycle, but wearing an identical helmet, Skahill proceeded around the curve and saw, in the shadow of the semi, an identically colored General Motors car. At trial, Skahill testified over objection that the experiment showed that "the car was easily visible at all times."

Plaintiff's objection was that the experiment was irrelevant and immaterial, that officer Skahill is not an expert and is thus incompetent to testify, and that the conditions and circumstances of the accident and the evidence of the experiment are not sufficiently similar. The court overruled the

objection and plaintiff claims that this is reversible error.

■ A. *Relevancy.* Evidence is relevant if it renders the existence of a fact more probable or less probable, and the determination of relevancy is a matter for the trial court to resolve in its discretion. *Thompson v. Bohlken,* 312 N.W.2d 501, 503 (Iowa 1981). Experimental evidence is admissible if it is of such a nature that it tends to aid the factfinder in its deliberations. *Althof,* 259 Iowa at 1256, 147 N.W.2d at 876. The question of its admissibility "is one of weighing the probative value of the evidence of experiments against the dangers of misleading the jury, . . . unfair surprise, and, occasionally, undue consumption of time." Generally, the test for probative value is the extent to which the conditions of the experiment are similar to the circumstances of the accident; the degree of similarity required will depend on the proposed use of the evidence of the experiment. *McCormick on Evidence,* § 202 (2d ed. 1972). We find the questions relevant.

B. *Competency of witness.* Certainly, the person making the experiment must be competent to do so. Generally, the degree of expertness required depends on the nature of the experiment and all the circumstances. 29 Am.Jur.2d *Evidence* § 822 (1967). It would seem that no large degree of expertness is required to determine the visibility of an ordinary automobile on the highway. *See* 78 A.L.R.2d 785.

■ Nor does it destroy the admissibility of the experiment because the conductor of the experiment had an expectation of observing the automobile and because he was involved in the accident. This partiality is a weakness which in the interest of justice should be avoided in the planning of visibility tests. *McCormick,* § 202 at 485 n. 8; *Complete Auto Transit v. Floyd,* 249 F.2d 396 (5th Cir.1957). But the bias of the witness goes not to admissibility, but to the weight of the evidence. *Complete Auto Transit,* 249 F.2d at 398; *Burg v. Chicago,*

*Rock Island & Pacific Railway Co.,* 90 Iowa 106, 118, 57 N.W. 680, 683 (1894).

We see no error in the trial court's determination that Skahill was competent to testify about the experiment.

■ C. *Conditions and circumstances.* The conditions and circumstances of the accident and the evidence of experiments sought to be adduced must be substantially similar. *Galbraith v. George,* 217 N.W.2d 598, 602 (Iowa 1974); *Althof,* 259 Iowa at 1257, 147 N.W.2d at 876. The burden of showing similarity in essential conditions is on the party offering the evidence. 32 C.J.S. *Evidence* § 590 (1964). The circumstances do not have to be identical, and in certain situations evidence of experiments may be admitted for some purposes despite failure to show similarity of circumstances in several particulars. *Palleson v. Jewel Cooperative Elevator,* 219 N.W.2d 8, 15–16 (Iowa 1974); *McCormick,* § 202 at 486. The degree of similarity depends on the purpose for which the evidence is to be introduced. 29 Am.Jur.2d *Evidence* § 824. The question of similarity lies within the discretion of the trial court, *id.,* as does the whole question of admissibility. *Palleson,* 219 N.W.2d at 16; *Galbraith,* 217 N.W.2d at 602; *Althof,* 259 Iowa at 1257, 147 N.W.2d at 876; *Cunningham v. Court,* 248 Iowa 654, 666; 82 N.W.2d 292, 299 (1957); *Hackman v. Beckwith,* 245 Iowa 791, 804, 64 N.W.2d 275, 283 (1954). We will interfere on appeal only if there has been an abuse of discretion. *Althof,* 259 Iowa at 1257, 147 N.W.2d at 876.

The scene of the experiment was not identical to the actual collision scene: Only one motorcycle was used; the exact cars and trucks were not used; one rather than two patrol cars was used; a patrolman did not stand in the highway; and the experiment did not show whether the car representing the Bozich vehicle was moving forward, backward, or had stopped. These differences, primarily involving vehicles off the highway, would have little or no effect on a cyclist's ability to discern a vehicle located in the semi's shadow. After dece-

dent passed officer North, there were no obstructions on the highway that would have interfered with decedent's ability to see the Bozich vehicle. The stated purpose of the experiment concerned the effect of the shadow on visibility. Despite the differences in circumstances, we are unwilling to find that the trial court acted unreasonably in admitting the experiment or that it abused its discretion. *See Morrison*, 323 N.W.2d at 256.

At issue was the admissibility of the experiment evidence; we find the trial court did not err.

DECISION OF COURT OF APPEALS VACATED; AFFIRMED.