In the Interest of D.L., A Minor Child,

M.B., Mother, and T.L.,
Father, Appellant.

No. 85–1894.

Court of Appeals of Iowa.

Dec. 23, 1986.

David D. Dixon of Heslinga, Heslinga & Dixon, Oskaloosa, for appellant M.B.

Allen A. Anderson of Spayde, White & Anderson, Oskaloosa, for appellant T.L.

Randall Stavers of Clements, Pothoven, Pabst & Stavers, Oskaloosa, Guardian Ad Litem.

Thomas J. Miller, Atty. Gen., Valencia Voyd McCown, Asst. Atty. Gen., Mahaska Co. Atty., Charles A. Stream, for appellee State.

Considered by OXBERGER, C.J., and SNELL and HAYDEN, JJ.

OXBERGER, Chief Judge.

This appeal arises from a child-in-need-of-assistance (CHINA) proceeding in juvenile court pursuant to Iowa Code section 232.-2(6)(b) (1985). The State instituted the underlying proceeding on behalf of D.L., an infant child, after D.L. was taken to a hospital for treatment of what was subsequently diagnosed as multiple skull and rib fractures and hematomas. D.L.'s natural parents challenge the order adjudicating their child to be in need of assistance, asserting: (1) that certain medical records and test results introduced into evidence by the State should have been excluded as a sanction for a failure to respond to interrogatories designed to disclose their existence; (2) that expert testimony concerning the profile of a child abuser should not have been admitted into evidence; and (3) that the evidence adduced by the State was insufficient to establish that D.L.'s injuries were the result of child abuse. We affirm.

## I. STANDARD OF REVIEW

■ The principles controlling our review are well established, and are not in dispute. Appellate review of CHINA proceedings is de novo; accordingly, we review the facts and the law and adjudicate rights anew where the issues have been properly preserved and presented. *In re Interest of W.G.*, 349 N.W.2d 487, 491–92 (Iowa 1984). Our paramount concern is the welfare and best interest of the child. *In Interest of J.R.H.*, 358 N.W.2d 311, 317 (Iowa 1984). In resolving the issues presented in this appeal, our ultimate task is to review the record and determine whether the State has met its burden of presenting clear and convincing evidence supporting the finding that D.L.'s injuries were caused by physical abuse. *In Interest of Driver*, 311 N.W.2d 87, 88 (Iowa 1981).

## II. EVIDENTIARY ISSUES

A. IMPROPER DISCLOSURE IN INTERROGATORIES. Prior to the hearing, the appellants propounded several interrogatories upon the State which were directed to discover the photographs and x-rays of D.L. obtained by the State, and the scope of the State's expert's testimony. In response to these interrogatories, the State indicated that x-rays had been taken, and that its expert, Dr. Smith, would testify as to his findings based upon "examinations and x-rays of D.L." At the hearing, Dr. Smith testified regarding his conclusions after examining the x-rays, CT (computerized tomographic) scans and NMR (nuclear magnetic resistance) scans performed upon D.L. The appellants argue that because CT and NMR scans are not x-rays, the State was erroneously permitted to introduce evidence which was not identified in its responses to the interrogatories.

It is well established that a party responding to interrogatories owes a duty to supplement its responses if they were incorrect when made, or if additional information concerning the identity, subject matter, or substance of an expert's testimony has subsequently been obtained. Iowa R.Civ.P. 125(a)(2); *Miller v. Bonar*, 337 N.W.2d 523, 527 (Iowa 1983). The trial court is vested with the power to enforce this rule, and may impose sanctions for a litigant's failure to obey. *Hubby v. State*, 331 N.W.2d 690, 697 (Iowa 1983). Such sanctions may include the exclusion of the evidence, the granting of a continuance, or other action which the court deems appropriate. *Miller v. Bonar*, 337 N.W.2d at 527. On review, we recognize the trial court's wide discretion in ruling on discovery issues, and will reverse its determination in this capacity only if an abuse of discretion has occurred. *White v. Citizen National Bank of Boone*, 262 N.W.2d 812, 816 (Iowa 1978); *see also Agrivest Partnership v. Central Iowa Production Credit Association*, 373 N.W.2d 479, 480 (Iowa 1985). An abuse of discretion is found only "when such discretion is exercised on grounds or for ... reasons clearly untenable or to an extent clearly unreasonable." *Hubby v. State*, 331 N.W.2d at 697; *see also Barks v. White*, 365 N.W.2d 640, 644 (Iowa Ct.App.1985). Moreover, we note that the courts of this state have been slow

to find an abuse of discretion and generally have done so only in cases involving dismissal. *Sullivan v. Chicago & Northwestern Transportation Co.*, 326 N.W. 320, 324 (Iowa 1982).

■ We think that the juvenile court's admission of the testimony challenged in the instant case was both tenable and reasonable. First, we note that in answering the interrogatories, the State made reference to the CT scans when it responded that "x-rays were taken ... [as] summarized in the University Hospital letter;" the letter was attached to the State's responses, and it explicitly mentioned CT scans among the photographic examinations performed upon D.L.

Although the NMR scans were not mentioned in the State's responses to the interrogatories, we do not think that the admission of the testimony concerning the NMR results constitutes an abuse of discretion. The NMR scans did not provide any new evidence, but rather corroborated the results of the x-ray and CT scans. *See also Barks v. White*, 365 N.W.2d at 643 (purpose of discovery rules is to aid interrogating party in preparation—this goal was not hampered in the instant case). Furthermore, we think that the supreme court's resolution of a nearly identical issue in *Hubby v. State*, 331 N.W.2d at 697, is dispositive. In *Hubby*, the appellant challenged the admission of an expert's testimony concerning the speed, position, and path of a vehicle. In answering an interrogatory directed to the nature of the expert's testimony, the appellee had indicated that the expert would give facts and opinions as elicited in a pretrial deposition; the appellant argued that the expert's actual testimony departed from the deposition, and should have been excluded. *Id.* The supreme court disagreed, noting that the expert's testimony was "closely allied" with the deposition. *Id.* In addition, the court stated:

We would be too fastidious if we would decide that the trial court was unreasonable in allowing facts in the record on the same subject to be considered in rendering the opinion.

*Id.* The application of this rationale in the case before us compels an identical result.[1]

B. BATTERING PARENT "PROFILE" TESTIMONY. The appellants also maintain that the court erred in admitting Dr. Smith's testimony concerning the "profile" of an abusive parent. On direct examination, Dr. Smith was asked to delineate the characteristics of a high-risk "battering parent." The doctor testified that abusive parents frequently exhibit similar characteristics such as a low income; the lack of a marital commitment; frequent unemployment; youthfulness; a history of having been abused in childhood; and a history of abusiveness toward others, particularly spouses and other children. Although Dr. Smith did not testify that either of the appellants possessed any of these characteristics, the State elicited testimony from additional witnesses indicating that they did.

The courts of this state have not previously considered the admissibility of "battering parent syndrome" evidence. Other courts that have addressed the issue in the criminal context, however, have consistently disallowed such evidence if its purpose is to demonstrate that the defendant(s) fit within the battering parent profile. These decisions are premised upon the rationale that character evidence generally may not be used to prove that the party in question acted in conformity with such character. *See, e.g., People v. Walkey*, 177 Cal.App.3d 268, 223 Cal.Rptr. 132 (1986); *Sanders v. State*, 251 Ga. 70, 303 S.E.2d 13 (1983); *Dudley v. State*, 56 Md.App. 275, 467 A.2d 776 (1983); *State v. Loebach*, 310 N.W.2d 58 (Minn.1981).

■ Without question, both Dr. Smith's testimony regarding the battered parent profile and the additional evidence concern-

---

1. Moreover, the court offered the appellants a continuance to allow additional preparation if necessary.

ing the character of the appellants were introduced to illustrate that the appellants fit within the profile. In Iowa, the general rule governing the admissibility of such character evidence is embodied in rule 404(a) of the Iowa Rules of Evidence. This rule provides in relevant part as follows:

(a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

. . . . .

Iowa R.Evid. 404(a). The exception to the rule's general prohibition set forth above is inapplicable in the instant case because the appellants did not put their character in issue. *See United States v. Parker,* 491 F.2d 517, 523–24 (8th Cir.1973); *State v. Osborn,* 200 N.W.2d 798, 808 (Iowa 1972). Accordingly, we conclude that the trial court erred in admitting the testimony.[2]

The State argues that child-in-need-of-assistance proceedings are of a special nature, and that evidence concerning the battered parent profile should be admissible because it aids in ascertaining the child's best interest. While we are mindful of the unique character of CHINA proceedings, we are nevertheless constrained to abide by the rules of evidence. Iowa Code § 232.96(3) (1985) ("only evidence ... admissible under the rules of evidence applicable to the trial of civil cases shall be admitted" in CHINA proceedings); *cf. In Interest of Long,* 313 N.W.2d 473, 478–80 (Iowa 1981) (appellant's objection to admission of social service report on the basis of hearsay overruled where statute explicitly provided that such reports shall be admitted in CHINA proceedings). It is generally recognized that the prohibitions of rule 404(a) of the Iowa Rules of Evidence extend to both the

criminal and civil contexts. *See Klaes v. Scholl,* 375 N.W.2d 671, 674 (Iowa 1985) (discussing rule 404 in civil assault context); *see also* McCormick, *Evidence* §§ 189–190 (2d ed. 1972).

Our conclusion that the juvenile court erred in admitting Dr. Smith's testimony does not, however, require that we reverse the court's finding that D.L. is a child in need of assistance. It is well established that error that is harmless does not warrant reversal. *See State v. Holland,* 389 N.W.2d 375, 379 (Iowa 1986); *State v. Waterbury,* 307 N.W.2d 45, 48 (Iowa 1981).

█ We have reviewed the record de novo, and conclude that the error did not contribute to or influence the adjudication; we have found a legion of properly admitted evidence supporting the court's conclusion. Accordingly, we find that the error was harmless. *See State v. Waterbury,* 307 N.W.2d at 48 (harmless error if other evidence overwhelmingly supports conclusion). The record discloses that D.L. was admitted to the hospital with multiple injuries in July of 1985. The x-rays, CT and NMR scans administered to D.L. revealed that he had suffered multiple skull and rib fractures, which were in various states of healing. The skull x-rays indicated that D.L. had sustained several fractures within a six-week period, with no sign of healing. The CT scans further disclosed two bilateral subdural hematomas on both sides of the brain and subgalea hematoma; Dr. Smith testified that the hematomas were between zero to fourteen days old. In addition, the x-rays of D.L.'s ribs revealed multiple fractures of various ages. Dr. Smith opined that the skull injuries were caused by repeated blows to the head, and that the rib fractures were the result of either a direct blow or intensive squeezing. There is no dispute that D.L.'s parents had sole custody of him when the injuries were sustained.

D.L.'s parents maintain, however, that the State failed to prove by clear and con-

---

**2.** The appellants additionally contend that Dr. Smith was not properly qualified to testify with respect to the battered parent profile. Because

of our disposition of this issue on other grounds, we find it unnecessary to address this contention.

vincing evidence that the injuries were caused by child abuse. They contend that D.L. suffered from an undiagnosed ailment called "osteogenesis imperfecta" (brittle bones) and that as a result of this disease, D.L.'s bones fracture easily and without substantial pain. In support of this contention, D.L.'s parents introduced the testimony of several witnesses who claimed that they had observed D.L. on various occasions prior to his hospitalization and that he had appeared healthy.

■ We agree with the juvenile court's conclusion that Dr. Smith's testimony is more convincing. Smith testified that the radiological tests performed upon D.L. disclosed no evidence of osteogenesis imperfecta. Although he noted that in one to five percent of the cases where the disease is found to exist it is not detectable by radiological examinations, he further testified that in those cases there is generally a family history of the disease. There is no evidence of a history of osteogenesis imperfecta in the instant case. Moreover, the fact that D.L. suffered skull fractures and subdural hematomas in addition to his rib fractures further negates the possibility of osteogenesis imperfecta; Dr. Smith testified that subdural hematomas and skull fractures are not caused by osteogenesis imperfecta. On the basis of this evidence, we have no difficulty in concluding that D.L.'s injuries were caused by abuse and that D.L. is a child in need of assistance. Moreover, we think that the evidence upon which we base this determination is clear and convincing.

AFFIRMED.