**In the Interest of L.T., A Minor Child,**

**N.T., Mother, Appellant.**

**No. 92–242.**

Court of Appeals of Iowa.

Oct. 27, 1992.

Randal B. Caldwell of Caldwell, Caldwell & Caldwell, Newton, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Judy Sheirbon, Asst. Atty. Gen., and Richard J. Scieszinski, County Atty., for appellee State.

Mark S. Lagomarcino of Hanson, Bjork & Russell, Des Moines, for appellee father.

David Adams, Public Defender, Des Moines, guardian ad litem.

Heard by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ., but decided by OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ. SACKETT, J., takes no part.

SCHLEGEL, Judge.

The natural mother appeals the juvenile court's CINA adjudication and dispositional order concerning her daughter. The court ordered the ten-year-old child be placed in a residential treatment facility to address the child's problems of morbid obesity, depression, and personality disorder. On appeal, the mother asserts the trial court erred in finding: (1) clear and convincing evidence existed indicating the child was in need of assistance under Iowa Code section 232.-2(6)(f) (1991); (2) reasonable efforts had been made to prevent the child's removal from the home as required by Iowa Code section 232.102(5)(b) (1991); and (3) residential group home placement was the least restrictive placement appropriate.

Loren and Natalie[1] were married on June 23, 1979. Their marriage produced a daughter, Liza,[2] born January 25, 1981, who is the subject of this appeal. During the marriage, Loren, Liza's natural father, often became intoxicated and frequently abused Natalie, Liza's natural mother. Liza witnessed the domestic violence and is still angry about her father's behavior. Liza gained approximately eighty pounds during the last two years of her parents' marriage. In October 1990 Natalie left the home taking Liza and her half brother away from Loren. Natalie and Loren dissolved their marriage in March 1991. Pursuant to the terms of the dissolution, Liza remained in the physical care of her mother.

Liza's physician, Dr. McKeever, indicated in a January 1991 letter that Liza was psychologically disturbed and needed psychiatric counseling as well as inpatient treatment for her morbid obesity. Natalie took Liza to a psychiatrist and a psychologist for help. By March 1991 Liza was five feet three inches tall and weighed 270 pounds; she was ten years old. Liza became very resistant to weekend visitation with her father and rapidly continued to gain weight. By March 1991 Natalie requested the assistance of the department of human services; a caseworker referred Liza to the Skiff Hospital weight control program and arranged weekly counseling.

From September 13 through October 13, 1991, Liza was hospitalized upon the recommendation of a child psychiatrist. Upon her admission into the hospital Liza weighed approximately 290 pounds and had a yeast infection growing out of control in the skin creases on her abdomen. The yeast infection produced an extremely strong body odor. Liza's physicians diagnosed her as having a severe infantile personality disorder and a problem with morbid obesity caused by overeating as a method of coping with the strife between her parents. At the conclusion of Liza's hospitalization, her psychiatrist recommended a long-term residential treatment program which could address Liza's potentially life-threatening obesity as well as her emotional problems. Liza then weighed 266 pounds.

1. These names are used for clarity only and are not the parents' real names.

2. This is not the child's real name.

After Natalie declined to place Liza in residential treatment and did not schedule appointments with the Skiff dietary program, the State instituted a CINA proceeding on September 11, 1991. The juvenile court referee found Liza to be a child in need of assistance as defined by Iowa Code section 232.2(6)(f) (1991). The court determined Liza required immediate treatment to cure or alleviate her serious mental illness or emotional damage as evidenced by her depression and withdrawal. The court ordered placement of Liza in residential treatment foster care. Natalie, Liza's natural mother, appeals. Loren, Liza's natural father, agrees with the juvenile court's decision.

■■■ In CINA proceedings, we review the evidence de novo. *In re J.R.H.*, 358 N.W.2d 311, 317 (Iowa 1984). Of paramount concern is the welfare and best interests of the child. *In re D.L.*, 401 N.W.2d 201, 202 (Iowa App.1986). We must review the record to determine whether the finding of a child in need of assistance is supported by clear and convincing evidence. Iowa Code § 232.96(2) (1991). Although we are not bound by the findings of the juvenile court, we give weight to the juvenile court's findings of fact because that court has had the unique opportunity to hear and observe the witnesses first hand. *In re S.V.*, 395 N.W.2d 666, 668 (Iowa App.1986).

■■ The juvenile court referee determined Liza to be a child in need of assistance in accordance with Iowa Code section 232.2(6)(f) (1991). We agree with the court's determination. This code section provides:

"*Child in need of assistance*" means an unmarried child who is in need of medical treatment to cure or alleviate serious mental illness or disorder, or emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior toward self or others and whose parent, guardian, or custodian is unwilling or unable to provide such treatment.

Liza has been evaluated by numerous psychologists and psychiatrists, and the record in this case contains clear and convincing evidence indicating Liza suffers from severe depression, infantile personality disorder, and morbid obesity. While Liza's intelligence has been assessed as "high average," her child psychiatrist has testified Liza's emotional behavior is characteristic of a much younger child, perhaps four or five years of age. Liza suffers from sleep disturbances, frequent crying, and angry outbursts and frustrations.

Liza underwent a thorough medical examination which revealed no physical cause for her obesity. Her child psychiatrist testified Liza's obesity is a symptom of her chronic depression, and he stated Liza overeats to relieve her depression. The record further reveals Liza's obesity is a potentially life-threatening condition which will likely result in a significantly increased risk of hypertension and a decreased life expectancy. In addition, Liza's severe obesity already interferes with her participation in the socialization a child requires to develop physically, mentally, and emotionally.

Liza's psychiatrist further stated that, in light of Liza's severe situation, she requires long-term residential treatment in a structured environment. Specifically, her psychiatrist recommends enrollment in a residential program which includes family therapy. He believes such a program is crucial considering Liza's parents' significant problems and the connection between these problems and Liza's severe depression. He has overtly stated Liza's problems are not of the type which can be effectively treated on an outpatient basis at this time. However, if Liza receives long-term residential treatment, he has stated Liza's prognosis is excellent.

Liza's mother, Natalie, has been unable to effectively assist Liza with her problem of obesity. Under her mother's care, Liza has failed to lose weight and has failed to attend dietary classes. Further evidence indicates Natalie has actively provoked Liza's adverse feelings for her father and has encouraged Liza's eating habits as a method of coping with the resulting stress.

On one occasion, following a session with a treatment professional, Natalie suggested giving Liza food to reward her and to relieve Liza's stress.

While Natalie has driven Liza to numerous appointments with physicians and dietitians, Natalie refuses to consider the treatment service which Liza now requires above all else: residential treatment designed to minister to Liza's psychological problems and the resulting eating disorder and morbid obesity. As a result of Natalie's refusal to cooperate in extending to Liza the care she needs, we affirm the juvenile court referee's adjudication of Liza as a child in need of assistance.

■ Furthermore, we flatly reject Natalie's contention that reasonable efforts have not been made to prevent the removal of Liza from the home pursuant to Iowa Code section 232.102(5)(b) (1991). The record is replete with evidence to the contrary. Liza's immediate and long-term best interests dictate her placement in the custody of the department of human services for residential treatment foster care. Liza's child psychiatrist has indicated outpatient counseling for Liza may be possible in the future. However, he has firmly stated such treatment can only be effective after Liza attends residential treatment in order to gain control over her depression and obesity. Accordingly, we affirm the juvenile court referee's order.

AFFIRMED.