In the INTEREST of S.V.G., A Child,

J.H., Father, Appellant.

No. 92–653.

Court of Appeals of Iowa.

Dec. 29, 1992.

Carla S. Garrels–Pearson of Dolezal, Miller, Garrels–Pearson & Wall, Cedar Rapids, for appellant.

Bonnie J. Campbell, Atty. Gen., John Parmeter, Sp. Asst. Atty. Gen., Judy Sheirbon, Asst. Atty. Gen., and Rebecca A. Belcher, Asst. County Atty., for appellee State.

Jose Olvera, Cedar Rapids, attorney and guardian ad litem for minor child.

Heard by OXBERGER, C.J., HAYDEN, J., and KEEFE, Senior Judge.*

HAYDEN, Judge.

John and Nicole are the natural parents of Samantha who was born February 7, 1982.[1] Since her birth Samantha has lived under unstable conditions. There were times when she lived with both parents and other times when she would live with one or the other.

In February of 1990 Nicole deserted John and Samantha. Feeling unable to care for Samantha by himself, John placed her in emergency foster care on February 21, 1990. Later the State filed a child in need of assistance (CINA) petition. Due to Nicole's abandonment and John's alcohol abuse problem and inability to provide stable living conditions, the juvenile court found Samantha to be a child in need of assistance. The court's dispositional order provided for foster care of Samantha, weekly supervised visits for John, and psychological evaluations for both Samantha and John.

In January of 1992, in response to John's significant progress on his case plan, the State obtained an order for a trial placement of Samantha in John's home. Eleven days later, however, John returned Samantha to the foster home. Later the State requested a permanency hearing and urged the court to change the permanency goal from family reunification to long-term foster care pursuant to Iowa Code section 232.104(2)(d)(4) (1991).

After the hearing the juvenile court found although John cares for Samantha he is unable to decide whether he wants the responsibility of caring for his daughter. When given the responsibility he claims he is unprepared and rejects it. Accordingly, the juvenile court ordered the permanency goal changed from family reunification to long-term foster family care. John appeals.

Our review of an order arising out of a CINA proceeding is de novo. *In re Blackledge,* 304 N.W.2d 209, 210 (Iowa 1981). We review both the facts and the law and adjudicate rights anew as to those issues which have been properly preserved and presented. *In re D.L.,* 401 N.W.2d 201, 202 (Iowa App.1986). We give considerable weight to the fact findings of the juvenile court, but we are not bound by them. *In re W.G.,* 349 N.W.2d 487, 491–92 (Iowa 1984), *cert. denied sub nom. J.G. v. Tauke,* 469 U.S. 1222, 105 S.Ct. 1212, 84

---

* Senior Judge from the 1st Judicial District serving on this court by order of the Iowa Supreme Court.

1.  Samantha, Nicole, and John are not the parties' real names. The child's initials are S.V.G.; her mother's initials are N.G.; and her father's initials are J.H. We have used the pseudonyms Samantha, Nicole, and John throughout the opinion for the sake of simplicity in the identification of the parties.

L.Ed.2d 353 (1985). Our paramount concern is the child's welfare and best interests. *D.L.*, 401 N.W.2d at 202.

I. John challenges the constitutionality of Iowa Code section 232.104. This issue has not been preserved for appeal. We have repeatedly held matters not raised in the trial court, including constitutional questions, cannot be effectively asserted for the first time on appeal. *State v. Lyon*, 223 N.W.2d 193, 194 (Iowa 1974).

II. John contends the trial court's application of Iowa Code section 232.104 was improper. We disagree.

■ Since February of 1990 Samantha has been in foster care with the exception of eleven days in January of 1992. In the fall of 1991 John was informed of the plans to return Samantha to his home by the end of the year. In the following months John frequently changed his mind regarding whether he was ready for the responsibilities associated with Samantha's return. One week he would request Samantha's return and the next he would state he was not prepared. John also made inappropriate comments such as claiming he was not Samantha's father and stating he was not ready for her to return home. Although John knew Samantha would be returning, he did very little to obtain housing or prepare for her return. Unfortunately, Samantha's return to John's home was short lived. John placed Samantha back in foster care eleven days after her return. At that time he indicated a desire to have his parental rights terminated.

The provisions governing a permanency hearing are found in Iowa Code section 232.104 (1991). A permanency hearing can be held (1) "[i]f a child has been placed in foster care for a period of twelve months, or" (2) "if the prior legal custodian of the child has abandoned efforts to regain custody of the child." Iowa Code § 232.104(1) (1991). Prior to entering a permanency order, convincing evidence must support all of the following:

 a. A termination of the parent-child relationship would not be in the best interest of the child.

 b. Services were offered to the child's family to correct the situation which led to the child's removal from the home.

 c. The child cannot be returned to the child's home.

Iowa Code § 232.104(3) (1991). Termination of John's parental rights would not be in best interests of Samantha because a bond exists between father and daughter. However, John has been offered services and yet Samantha is unable to return home. John was offered services such as substance abuse counseling and family therapy, including discussions on finances, housing, parenting skills, and his indecision about Samantha's return to his home. A trial home placement even proved to be unsuccessful.

In determining what is in the best interest of the child, we may look at the parent's past performance "for that performance may be indicative of the quality of the future care that parent is capable of providing." *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981) (citations omitted). A pattern has developed showing John is not truly committed to caring for Samantha and is not ready to accept the responsibilities of raising a child. Samantha has suffered from her father's rejection of her and his inconsistent caretaking. This child deserves stability in her life. The amount of patience for John's actions must be reasonably limited because "patience with parents can soon translate into intolerable hardship for their children." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987), *cert. denied sub nom. A.C. v. State*, 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 702 (1988).

There are a number of stern realities faced by a juvenile judge in any case of this kind. Among the most important is the relentless passage of precious time. The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems. Neither will childhood await the wanderings of judicial process. The child will continue to grow, either in bad or unsettled conditions or in the improved and permanent shelter which ideally, at least, follows the conclusion of a juvenile proceeding.

*Id.* We hold the best interests of the child require she be placed in long-term foster care. Clear and convincing evidence supports the trial court's decision to change the permanency goal to long-term foster care. We affirm.

AFFIRMED.

SCHLEGEL, J., takes no part.