# IN THE COURT OF APPEALS OF IOWA

No. 19-0352
Filed July 3, 2019

**IN THE INTEREST OF A.W. and B.W.,**
**Minor Children,**

**JENNIFER OLSEN, Guardian ad Litem,**
     Appellant.
_____

Appeal from the Iowa District Court for Clinton County, Phillip J. Tabor, District Associate Judge.

The guardian ad litem appeals from the juvenile court's denial of the petition to modify the dispositional order and dismissal of the child-in-need-of-assistance adjudication. **REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.**

Jennifer Triner Olsen of Olsen Law Firm, Davenport, appellant and guardian ad litem for minor children.

Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for appellee State.

Considered by Potterfield, P.J., and Doyle and May, JJ. Tabor, J., takes no part.

**POTTERFIELD, Presiding Judge.**

The guardian ad litem (GAL) for A.W. and B.W., the minor children at issue, appeals the juvenile court's denial of the petition to modify the dispositional order and dismissal of the children-in-need-of-assistance (CINA) adjudication.

A.W. and B.W. were born in 2011 and 2013, respectively. They were initially removed from the mother's care in November 2016, which occurred after the mother's then-boyfriend, Eddie, physically abused B.W., leaving bruises on B.W.'s face, chest, and shoulders. Additionally, both A.W. and B.W. tested positive for THC. Soon thereafter, both children were adjudicated CINA pursuant to Iowa Code section 232.2(6)(b), (c)(1), (c)(2), (n), and (o) (2016); the court found "that the children were living with their mother where there were substance abuse and domestic violence issues and the children were not safe." The children were placed together in relative care.

While the children were out of her care the first time, from November 2016 through late July 2017, the mother participated in individual mental-health counseling and engaged in classes to address her history of being and staying in relationships with incidences of domestic violence. The mother was able to recognize the history of abuse in her romantic relationships. But she also continued to speak with and see Eddie, and—after asking the Iowa Department of Human Services (DHS) and being recommended not to—she chose to have the no-contact order lifted on another former paramour, Michael, who had assaulted her. The mother seemed to recognize B.W.'s well-founded fear of Eddie, but that did not stop her from having B.W. speak to Eddie on the phone.

The children were returned to the mother's custody in late July 2017 and remained in it until mid-October 2017. During this time, the mother began dating another man, Tyler, with an extensive criminal past. She was told he could not be around the children, but the mother ignored DHS's directive. DHS then became concerned the mother had moved Tyler into the home with her and the children; when confronted, the mother agreed to voluntarily place A.W. and B.W. back into the relatives' care. The voluntary placement became court ordered at a later review hearing.

Following the second removal, the children remained outside of the mother's care from October 2017 until mid-December 2018. Early in this period, the mother began a new romantic relationship, this time with Zach. The GAL expressed concerns that the mother chose to involve herself in another relationship, noting she had been encouraged to focus on just herself and her children but seemed unable to do so. DHS expressed concerns that Zach had some criminal history involving marijuana. The mother was told her new boyfriend could not be around the children, and again, the mother disregarded DHS's directive. Additionally, although the mother paid lip service to "taking things slow" with Zach, in February 2018, she reported on Facebook that she and Zach were engaged to be married.

In March 2018, DHS determined Zach was an appropriate person to be around the children; he completed a number of negative drug tests and engaged in services with the children and mother. Although there were setbacks—the mother and Zach both tested positive for THC in summer 2018—A.W. and B.W.

were returned to the mother's home—where Zach also lived—on December 14, 2018.

Then, on February 3, 2019, the county attorney filed a motion asking the court to modify the current dispositional order to remove the children from the mother's care once again. At the hearing on the motion, the GAL joined the county attorney's request, but DHS resisted. According to the mother's initial reports, Zach came home very intoxicated on New Year's Eve and the mother and Zach got into a verbal altercation, which then became physical, with Zach choking, hitting, pushing, and scratching the mother. After Zach calmed down, the mother woke up A.W. and B.W., and she and the children left the home and spent the night elsewhere. Within a day or two, the mother reported the incident to her therapist and appropriate DHS professionals. She showed DHS the marks left on her body from the incident and stated she was going to obtain a no-contact order against Zach. She also told DHS that she made Zach move out of the home, their relationship was over, and she would not be seeing or speaking to him. DHS explicitly told the mother she could not have Zach in the home or around the children until further investigation and steps were taken; she agreed. The mother did not get a no-contact order and, within a couple weeks, she allowed Zach into her home while the children were present. At the hearing on the motion, on February 28, 2019, the mother minimized the New Year's Eve attack; whereas she initially described being choked, she now said Zach had just "restrained" her and "wrapped [her] in a bear hug." She claimed the scratches she had previously shown DHS came from her dog. She also indicated she planned to continue her relationship with Zach. The social worker testified DHS

was recommending leaving the children in the mother's care because "these kids are very bonded to their mother" and they "have a routine."

After the presentation of evidence, the county attorney asked the court to remove the children from the mother's care, stating:

> If the children are paramount and their best interest is paramount, hope is no longer enough. We have thrown every possible service at this mother, and the same thing continues to happen, and to hear today that this is an isolated incident, it is not isolated. Mom today was not truthful about the very events she claimed to happen to the provider and the Department, minimizing or not being truthful about being assaulted. She has zero insight, zero protective capacity for these children. These children are not safe in her care.

The court ruled from the bench, stating:

> Well, the court considers the matter submitted. It's a very difficult situation because, as people have talked about our systemic issues, the front line of our children's system is [DHS], and the protection of the children is theirs, and the services to children involved in a CINA case is at their discretion and their responsibility through their providers. It's very difficult in a case where it's so clear that the issues that brought this family before this court 27 months ago were domestic violence and substance abuse and safety of the children. Two weeks after returning the children to the mother, we have an incident involving domestic violence and substance abuse, and [DHS] comes before the court two months after that where they submitted a new case plan dated the 19th of February that has absolutely no additional services for this family. None. No additional services for [Zach]; no additional services for Mom; no additional services for the children. And it leaves the court wondering where the services that are supposed to be provided to this family are, because I don't believe [DHS] is providing any services to this family to address the issues that were raised by the incident two weeks after the children were returned to their mother. And certainly from the testimony of [DHS] and the argument of the counsel for [DHS], nothing needs to change. We're gonna continue on providing the same services that we've provided to this mother for 27 months that were receiving the absolute same results that we've had with every other relationship she's established: That she continues to be a victim of domestic violence; that substance abuse continues to play a part in that. And we are not asking to change a thing, a thing. And that was said, I believe, by the representative of the Attorney General's Office.

Well, folks, here's the situation: CINA adjudication occurs under 232.96, and sub (8) says that if we're not gonna provide any service to the family, then the court need not provide oversight. Well, I'm gonna tell you what. Nobody is asking this court to provide any oversight in this case because every recommendation this court has made has not been followed. We put the children back with Mom. Within two weeks the very adjudicatory harm occurred again, and nobody thought to ask for any changes in a case plan. And I believe that if that's the attitude of [DHS] that is supposed to provide the services for the safety of these children and they don't see any need to change, this court cannot provide any service to this family, and these cases are dismissed.

Thank you, all.

The same day, the court entered written orders stating, "For the reasons stated on the record, these cases are dismissed."

The GAL appeals, asserting the juvenile court should not have dismissed the CINA adjudications and the county attorney established the dispositional order should be modified to remove the children from the mother's care again. We agree the CINA adjudications should be reinstated and remand to the juvenile court to determine, on the facts presently existing, whether and how to modify the dispositional orders.

First, we note that no one asked the court to dismiss the CINA adjudications; even DHS, which resisted the motion to modify, discussed the ongoing services in which the mother and family needed to continue participating. Second, the juvenile court dismissed the cases by relying upon Iowa Code section 232.96(8), which allows the court to dismiss a CINA petition—not a CINA adjudication—if it concludes "facts sufficient to sustain a petition have not been established by clear and convincing evidence or if the court concludes that its aid is not required in the circumstances." This section is inapposite. "We recognize that the job of the juvenile court can be extremely difficult, and, at

times, frustrating. This frustration is clearly compounded when the resources devoted to one family over a significant period of time seem to result in no improvement." *In re K.N.*, 625 N.W.2d 731, 734 (Iowa 2001). But, that being said, "a juvenile court may not terminate CINA adjudication status unless the purposes of the original dispositional order have been fulfilled and 'the child is "no longer in need of supervision, care or treatment."'" *Id.* (citations omitted). As that is not the case here, we agree with the GAL that the CINA adjudications should be reinstated.

Next, we consider whether the juvenile court should grant the motion to modify the dispositional order, removing the children from the mother's care for a third time. Section 232.103(4) allows the court to "modify a dispositional order, vacate and substitute a dispositional order, or terminate a dispositional order and release the child" if the court finds any of the following:

> a. The purposes of the order have been accomplished and the child is no longer in need of supervision, care, or treatment.
> b. The purposes of the order cannot reasonably be accomplished.
> c. The efforts made to effect the purposes of the order have been unsuccessful and other options to effect the purposes of the order are not available.
> d. The purposes of the order have been sufficiently accomplished and the continuation of supervision, care, or treatment is unjustified or unwarranted.

Our case law provides that "modification of custody or placement requires a material and substantial change in circumstances." *In re R.F.*, 471 N.W.2d 821, 824 (Iowa 1991). But our court has recently considered whether the requirement persists after the 2004 amendment to section 232.103. *See In re M.M.*, No. 16-0548, 2016 WL 4036246, at *4–5 (Iowa Ct. App. July 27, 2016)

(Potterfield, J., dissenting); *see also In re A.S.*, 17-0663, 2017 WL 2665119, at *1 n.1 (Iowa Ct. App. June 21, 2017); *In re A.J.*, No 16-1954, 2017 WL 1278366, at *3–4 (Iowa Ct. App. Apr. 5, 2017).

Here, we need not decide whether the prerequisite survived the amendment; the State proved a substantial and material change in circumstances since the previous dispositional order. Since the court's December 2018 order returning the children to the mother's care, the mother's live-in boyfriend assaulted her, which resulted in the mother kicking him out of the home and DHS forbidding the mother from allowing Zach to be around the children. The mother quickly did an about-face, minimizing the violence perpetrated against her, resuming the relationship with Zach, and allowing him to be in her home with the children.

We recognize the mother has made strides in her understanding of healthy relationships, recognizing warning signs of unhealthy relationships, and knowing what actions to undertake if domestic violence occurs, but she is apparently not yet able to choose her children and their safety over a violent paramour. We do not base this determination on the fact that Zach, after a one-year relationship without any other violent behaviors, perpetrated violence against the mother. She is not at fault for this incident, and we do not suggest otherwise. However, the mother is responsible for the choices she made afterward. As the mother has consistently told B.W. in an effort to regain his trust, she is the parent and she is the person in charge of keeping her children safe. Yet after the violent incident that took place, she chose to—against direct and explicit DHS directives—allow Zach back into her home and around her

children.  And although she originally reached out to professionals to report his violent actions, including providing physical evidence of the attack and her injuries, by the time of the hearing on the petition to modify disposition— approximately two months later—the mother minimized the violent incident.

While the State met the grounds for modification at the time of the hearing, we do not believe making a change now based on the facts and circumstances from several months ago is in the children's best interests.  *See In re S.V.G.*, 496 N.W.2d 262, 264 (Iowa Ct. App. 1992) (emphasizing that in child-welfare cases, "[o]ur paramount concern is the child's welfare and best interests").  Therefore, we reverse the juvenile court's ruling dismissing the CINA adjudication but remand for a hearing on the motion to modify the dispositional order.  We remand for the juvenile court to determine the appropriate placement of the children on the facts existing at the time of the new hearing.

**REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.**