**Richard ELDRIDGE, Appellant,**

v.

**Ronald J. HERMAN, Appellee.**

**No. 63005.**

Supreme Court of Iowa.

April 23, 1980.

320

Michael H. Irvine of Irvine & Currell, Cedar Rapids, for appellant.

Allan R. Bohanan of Lucas, Nolan & Bohanan, Iowa City, for appellee.

Considered by HARRIS, P. J., and McCORMICK, ALLBEE, McGIVERIN, and LARSON, JJ.

McCORMICK, Justice.

This case involves competing claims to $70,900 which defendant Ronald J. Herman found in the basement of a house in Iowa City. Herman deposited the money with the county auditor and followed the lost property procedures in chapter 644, The Code. Plaintiff Richard Eldridge subsequently brought this declaratory judgment

action seeking to establish his ownership of the money. After a trial to the court, the trial court held Eldridge failed to prove ownership and quieted title to the money in Herman. Upon Eldridge's appeal, we affirm.

The questions are whether the trial court erred in drawing an adverse inference against Eldridge's ownership claim because he invoked his privilege under U.S. Const. amend. V, whether the court erred in finding the money was lost property, and whether the money should have been awarded to the county.

■■ The legal or equitable nature of a declaratory judgment action is determined by the pleadings, the relief sought, and the nature of the case. *Frederick v. Shorman*, 259 Iowa 1050, 1055, 147 N.W.2d 478, 482 (1966). A claim of ownership under chapter 644 is triable as an ordinary proceeding. *See* § 611.6; *Tonini v. Maloney*, 228 N.W.2d 91, 92 (Iowa 1975). The action is analogous to trover or replevin. Moreover, this case was docketed and tried at law. Therefore we review it under legal principles.

■■ Applicable principles are delineated in *Farmers Insurance Group v. Merryweather*, 214 N.W.2d 184, 186–87 (Iowa 1974). Any ambiguity in the trial court's findings is resolved in favor of the judgment. *Id.* at 186. Because no motion for enlargement of findings was made under Iowa R.Civ.P. 179(b), we assume all unstated findings necessary to support the judgment were adverse to Eldridge. *See Grall v. Meyer*, 173 N.W.2d 61, 65 (Iowa 1969). *See generally Bahnsen v. Rabe*, 276 N.W.2d 413, 414 (Iowa 1979). Furthermore, when the court denies recovery in a law action because of a party's failure to carry the burden on an issue, we will not interfere on appeal unless we find the burden was carried as a matter of law.

I. *Eldridge's ownership claim.* Eldridge contends that the trial court erred in relying in part upon his claim of privilege against self-incrimination in holding he failed to prove he owned the money which Herman found. He also contends we should find he met his burden of proof to establish ownership.

The record shows that Eldridge was the tenant in the downstairs apartment and Herman and Jann Ream were tenants in the upstairs apartment of an older two-story house in Iowa City owned by John T. Nolan. Neither tenancy included the basement, but Nolan did not object to the tenants' use of it. Entry to the basement could be made from Eldridge's apartment or through an outside door. Both entries led down to a laundry room which the parties used. The basement had three other rooms, the largest of which was cluttered with cardboard boxes, pieces of metal, scraps of wood and other debris. A metal workbench was located under a light in about the middle of the large room.

Herman worked on a motorcycle in the large room during the winter of 1976–77. In February 1977 Herman obtained Nolan's permission to haul the trash from the basement, and he cleaned part of it on February 19 and 20. He had cleaned up to but not under the metal workbench in the large room. On the evening of the 20th he was sweeping the area of the floor in the large room which he had cleared when he saw a plastic bag of money under the workbench. It was visible from three to five feet away. He found two plastic ziploc bags containing currency there. He took the bags to his apartment and, with Ream's help, counted the money. It consisted of $100, $50, $20, and $10 bills, held in units of $1000 by rubber bands and paper clips, and with $1000 units bound to others with rubber bands. They counted approximately $70,000.

Concerned for their safety, Herman and Ream put the money back where Herman had found it. On the next evening Herman was again working on his motorcycle in the basement. Eldridge came downstairs and complimented him on how good the basement looked. Herman told him he was going to finish cleaning the basement on the following weekend so that if Eldridge had anything he wanted hauled away he could leave it by the cellar door.

The money was still there when Herman resumed cleaning the basement on February 25. He decided to move it for safekeeping, so he took it to his apartment and hid it under a loose floor board in the attic. On March 3 he turned the money over to the police, who gave him a receipt for $70,900 and placed the money in a bank vault.

Herman then gave an affidavit to the county auditor in accordance with section 644.7, advertised the finding pursuant to section 644.8, and filed proof of the advertising with the auditor as required by section 644.9. The proof of advertising was published with the minutes of the proceedings of the board of supervisors as provided in section 644.10.

Eldridge learned on March 3 that Herman had found the money but did not claim it was his until he did so through an attorney approximately six months later. He brought the present action one day prior to the expiration of the twelve-month limitation period of section 644.11. In his petition he asserted he owned $85,000 in cash which he had stored in a ziploc tobacco pouch in the basement of his residence. He accused Herman of converting $14,100 of the sum to his own use. Eldridge asked the court to declare him the owner of the money, to find the money was not "lost property," to deny Herman any reward, and to award him judgment against Herman of $14,100.

At trial Eldridge testified he hid the money in the basement in the morning of February 17. He described the manner in which the money had been bundled in substantially accurate detail. However, he did not say he used paper clips in sorting the money. In addition, he said he put it in three rather than two ziploc bags, insisted the total was $85,000, and asserted he placed the three ziploc bags in a larger bag which he hid beneath the bench under a stack of wood. He said he had obtained the money through the sale of "illicit commodities" in January and February 1977. When Herman's counsel attempted to cross-examine him concerning how he allegedly acquired the money, he repeatedly asserted his privilege against self-incrimination.

Counsel for Herman moved to dismiss the petition because of the claim of privilege but did not move to strike Eldridge's testimony on direct examination.

Substantial evidence was received from other witnesses that Eldridge was a suspected narcotics dealer, the home was under police surveillance, and persons had been observed entering and leaving the premises through the outside basement door on numerous occasions in January and February 1977. They usually stayed in the basement for only a few minutes.

In ruling against Eldridge on the merits of his petition, the trial court refused to credit his testimony because of his refusal to respond on cross-examination to questions which would require him to tell how he got the money. The court said: "The lack of information given by Mr. Eldridge and the circumstances surrounding 730 North Linn Street could lead one to believe there are several explanations as to the ownership and person or persons who could claim the money. By [his] refusing to give sufficient testimony concerning how the money was earned or accumulated, the Court could infer that the claim may be false."

■ We read the court's ruling as a holding that Eldridge did not meet his burden to prove the money was his. An adverse inference because of his assertion of privilege was one factor in the court's holding.

Eldridge contends Herman's only remedy for his assertion of privilege was a motion to strike his direct testimony. He alleges the court erred in considering the claim of privilege in ruling on the merits.

■ Even when a motion to dismiss or strike is not made, a trial court may infer in a civil case from a party's refusal to answer based on a claim of privilege against self-incrimination that the answer would be adverse to the party. *Conkling v. Conkling*, 185 N.W.2d 777, 784 (Iowa 1971); *Allen v. Lindeman*, 259 Iowa 1384, 1396, 148 N.W.2d 610, 617 (1967). This is the general rule. *See Baxter v. Palmigiano*, 425 U.S. 308, 317–20, 96 S.Ct. 1551, 1557–59, 47 L.Ed.2d

810, 820–22 (1976); *Poplar Grove Planting & Refining Co. v. Bache Halsey Stewart Inc.*, 465 F.Supp. 585, 591 (M.D.La.1979); *Justice v. Laudermilch*, 78 F.R.D. 201, 203 (M.D.Pa.1978); *Paynes v. Lee*, 362 F.Supp. 797, 799–800 (M.D.La.1973), *aff'd per curiam*, 487 F.2d 1307 (5th Cir. 1974); 8 J. Wigmore, *Evidence in Trials at Common Law* § 2272, at 439 (McNaughten rev. 1961); 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2018, at 150–51 (1970); *id.* at 40–41 (Supp.1979); Note, *Use of the Privilege Against Self-Incrimination in Civil Litigation*, 52 Va.L.Rev. 322, 340 (1966).

This inference authorized the court to reject Eldridge's testimony that he had earned the money through dealings in illegal commodities in January and February 1977. His testimony was also weakened by evidence he did not move the money after learning of Herman's cleaning the basement or report the income on his 1977 tax return. Other evidence showed numerous other persons had been in the basement in the several weeks before the money was found, and it was packaged in a way which would have been familiar to anyone engaged in large-scale drug transactions. Also, Eldridge may have learned some of the details through information which had been made public.

The trial court did not err in rejecting Eldridge's claim of ownership in part because of his refusal to answer questions on cross-examination based on his fifth amendment privilege. Moreover, under the whole record, the court was not compelled as a matter of law to hold that Eldridge proved his ownership claim.

■ II. *The money as lost property.* Eldridge asked the court to find the money was not "lost property" within the meaning of chapter 644. Property is lost when the owner involuntarily and unintentionally parts with its possession and does not know where it is. *Flood v. City National Bank*, 218 Iowa 898, 902–05, 253 N.W. 503, 512–13 (1934); *Paset v. Old Orchard Bank & Trust Co.*, 62 Ill.App.3d 534, 537, 387 N.E.2d 1264, 1268, 19 Ill.Dec. 389, 393 (1978); *Jackson v. Steinberg*, 186 Or. 129, 133, 200 P.2d 376,

377 (1948), *rehearing denied*, 186 Or. 140, 205 P.2d 562 (1949); *Schley v. Couch*, 155 Tex. 195, 199, 284 S.W.2d 333, 335 (1955). In *Flood*, this court held that money which was stolen from a bank and found in a rubbish heap near a roadside less than three hours later met the definition of lost property.

In the present case, evidence showed that the money had been put in circulation after 1974. It was found in the midst of pieces of wood and other debris in a basement cluttered with junk. If Herman's testimony is believed, it was not well hidden or secure. The owner of the premises did not know the money was there and disclaimed any interest in it. Eldridge did nothing to take it or protect it despite knowing the basement was being cleaned. Numerous persons had been in and out of the basement during the several weeks before the money was found. It would be unusual for an owner of $70,900 in cash to put it in such an unsafe place on purpose. As trier of fact, the trial court could reasonably conclude the owner of the money had not voluntarily or intentionally put it where Herman found it and did not know it was there.

Therefore, the court's holding that the money was lost property is supported by substantial evidence.

■ III. *Disposition of the money.* The trial court held that Herman was entitled to keep the money. Eldridge asserts that even if the money were lost property the court should have awarded it to the county instead of to Herman.

Passing the fact he did not urge this contention in the trial court and the issue of his standing to do so, we find it is without merit. Under section 644.11, title to lost property vests in the finder when the statutory procedures have been followed and "no person appears to claim and prove ownership" within twelve months of the filing of the proof of publication with the county auditor. Here, although Eldridge appeared to claim ownership, the trial court decided he failed to prove it. This settles the ownership dispute in Herman's favor. Section

644.15, relied on by Eldridge, applies only to situations specified in it, none of which exists here.

We have considered all of Eldridge's assignments and arguments and find no basis for reversal of the judgment of the trial court.

AFFIRMED.