Stanley C. RODGERS, d/b/a Rodgers Real Estate, Plaintiff-Appellant,

v.

Harold C. BAUGHMAN and Gladys M. Baughman, Husband and Wife, and Levelcrest Farms, Inc., A Corporation; Defendants-Appellees,

and

William Sherman, Defendant.

No. 84–1378.

Court of Appeals of Iowa.

Dec. 18, 1985.

Vern M. Ball and R. Kurt Swaim, Bloomfield, for plaintiff-appellant.

Robert A. Hutchison and Monte R. Hanson of Brown, Winnick, Graves, Donnelly & Baskerville, Des Moines, for defendants-appellees.

Heard by DONIELSON, P.J., and SCHLEGEL, and HAYDEN, JJ.

SCHLEGEL, Judge.

Plaintiff real estate broker appeals the district court's dismissal of his claim for commission allegedly due under a listing agreement. We affirm the district court.

Factually, this case evolves from the alleged sale of Levelcrest Farm situated in Davis County, Iowa. The farm is owned by a corporation, but the major shareholders are Harold and Gladys Baughman. In early spring of 1981, Rodgers Real Estate, through the efforts of plaintiff Stanley C. Rodgers and Dwight Blasi, began discuss-

ing with Harold Baughman the possible sale of Levelcrest Farm.

In May 1981, Blasi informed Baughman that he had a prospective purchaser and that he would like Baughman to sign a listing agreement on his farm. Blasi told Baughman at this time that the listing agreement would not be binding and that he, Blasi, would tear up the listing agreement anytime Baughman desired. Baughman signed the listing agreement and Blasi proceeded to show the farm to the prospective buyer, Harley Meeker. Blasi then conferred with Baughman who wanted to know about Meeker's financial situation. As it turned out, Meeker was financially unable to purchase the farm.

Shortly thereafter, Bill Sherman contacted Blasi and expressed interest in purchasing Levelcrest Farm. After touring the farm, Sherman, Blasi and Baughman discussed financing plans and in particular, how Sherman would propose to operate and run the farm. An offer, prepared by Blasi and Sherman's attorney, and reviewed by Rodgers, was then presented to Baughmans. The proposal contained a price of $1,750,000, and a provision suggested by Rodgers, that only the interest would be paid during the first three years of the proposed twenty-year contract, which was to be carried by the Baughmans. The agreement specifically proposed that Sherman would pay $250,000 on March 1, 1982, and the balance would bear interest at 9%.

Because the Baughmans were going to carry the contract with Sherman, the method of financing was a significant condition precedent to any legally binding agreement. Under their agreement, Sherman was required to sell his own farm so that he could obtain the financing for the down payment. This would enable him to buy Levelcrest and operate it as a family farm.

Harold and Gladys Baughman were told, when they signed the purchase agreement, that their signatures were necessary merely as a form to set up the possibility for Sherman to gain financing for the transaction. Both Blasi and Sherman emphasized that it was necessary for both spouses to sign the paper before they could make an application for a loan because it would be their authority to make a loan on this specific piece of property. Gladys Baughman was especially reluctant to sign the purchase agreement, but did so only after Harold assured her that her signature was necessary for Sherman to obtain financing. Neither Blasi nor Sherman told the Baughmans that they considered the purchase agreement to be a binding contract.

It soon became apparent to Sherman and Blasi that Sherman was going to have trouble arranging the type of financing that was discussed in their meetings with Baughman. Both Blasi and Sherman consulted attorneys to see whether Sherman could sell off part of the land that he was buying from Baughmans to finance his transaction. Blasi then assisted Sherman in preparing a purchase agreement whereby Sherman offered to sell 240 acres of the land to Bill Wuthrich. Sherman and Wuthrich executed the purchase agreement on June 17, 1981, and shortly thereafter Blasi and Sherman advised Harold Baughman of Sherman's plan to sell off a portion of the farm to Wuthrich.

Sherman had originally planned to sell his present farm to his son provided his son could obtain financing from the Farmers Home Administration. When his son was turned down by the FHA, Sherman, with the aid of Blasi, decided to sell an additional 280 acres of Levelcrest Farm to Bruce Knapp, a twenty-year-old man. Neither Rodgers nor Blasi disclosed to the Baughmans the fact that they were assisting Sherman in the sale to Knapp. When this sale was disclosed to Harold and Gladys, they immediately objected. Harold stated that he did not feel that anyone could make a living on each of the proposed three parcels and that the three-way split was not the financing contemplated.

On July 1, 1981, Harold Baughman mailed a letter to Sherman informing him that the purchase offer was terminated, since the original conditions had not been fulfilled. On the same day Sherman wrote

to Baughman that he was ready, willing and able to perform.

Plaintiff originally included Sherman as a defendant in this action, but at the commencement of trial he moved to dismiss Sherman without prejudice and the motion was sustained.

Plaintiff continued this action against Harold and Gladys Baughman alleging that the defendant had executed a binding contract for the sale of Levelcrest Farm and that plaintiff is entitled to his real estate commission. Defendants generally denied all of plaintiff's allegations and filed counterclaims against plaintiff alleging that plaintiff acted with malice toward the Baughmans and that plaintiff also breached his fiduciary duty to defendants Baughmans. Defendants then filed a cross-petition against Dwight Blasi alleging misrepresentation and breach of his fiduciary duty to defendants.

The case was tried to the court on June 22, 1982, and concluded on June 30, 1982, when the trial court sustained defendant's motion for a directed verdict. The ruling was appealed to the Iowa Supreme Court who reversed and remanded the case for completion. *Rodgers v. Baughman,* 342 N.W.2d 801 (Iowa 1983).

The trial was continued and resulted in a verdict for the defendants. The trial court's ruling dismissed the plaintiff's petition and also dismissed defendant's counterclaim and cross-petition. On appeal, plaintiff alleges numerous errors were committed by the trial court. These issues are as follows: (1) it was error to find that a sale must be accomplished before a commission was earned; (2) it was error to hold that plaintiff failed to prove that Harold Baughman had authority to bind Levelcrest Farms, Inc., to the listing agreement; (3) it was error to find that no binding purchase contract existed; (4) it was error to hold that section 496A.76 of the Iowa Code provides some protection to Levelcrest Farms, Inc., in this case; (5) it was error to hold that plaintiff breached its fiduciary duties; and (6) it was error to conclude that plain-

tiff was negligent in not urging Harold Baughman to seek tax advice.

**I. Scope of Review.** At the outset it is imperative for this court to establish the proper burden of proof attributable to each party. This case involves an effort by the plaintiff to establish the existence of a binding contract in order to earn a commission. It is plaintiff's burden to prove the existence, terms and binding nature of any contractual arrangement between the Baughmans and Sherman. It is defendant's burden, on the other hand, to prove the allegations in their affirmative defenses, counterclaims, and cross-petition. Therefore, defendants must prove misrepresentation, malice, and breach of fiduciary duty on the part of plaintiff and his agent Blasi.

This is an action at law, and tried to the court. In its findings of fact, the trial court found that plaintiff had failed to carry his burden of proof regarding the existence of a binding contract between the Baughmans and Sherman. When the trial court denies recovery in a law action due to a party's failure to carry the burden of proof on an issue, the appellate court will not interfere unless it finds that the burden was carried as a matter of law. *Eldridge v. Herman,* 291 N.W.2d 319, 321 (Iowa 1980). The supreme court has stated that "only in very rare instances do we hold that a party having the burden of proof has sustained it as a matter of law." *Duffy v. Harden,* 179 N.W.2d 496, 501 (Iowa 1970). In order to interfere with the trial court's determination of evidentiary insufficiency against the party having the burden of proof, the evidence must be so overwhelming and so conclusive so as to compel recovery. *See Public Finance Co. v. Van Blaricome,* 324 N.W.2d 716, 718 (Iowa 1982); *see also Stalely v. Bazel Bros. Co.,* 247 Iowa 644, 649, 75 N.W.2d 253 (1956).

In reviewing the finding of the trial court, the appellate court must view the evidence in the light most consistent with the judgment, *R.E.T. Corp. v. Frank Paxton Co., Inc.,* 329 N.W.2d 416, 419 (Iowa 1983); and, if any ambiguity in the evi-

dence is present, the evidence is construed to uphold rather than defeat the trial court's judgment. *Janda v. Iowa Industrial Hydraulics, Inc.*, 326 N.W.2d 339, 341 (Iowa 1982).

**■ II. Requirement of a Sale For Commission.** Plaintiff alleges that the terms of the listing agreement do not require a sale to be completed before it is entitled to a commission. The relevant terms of the listing agreement are as follows:

> We hereby give you ... the exclusive right to find a purchaser for or sell the property described herein, ... and in consideration of your accepting this authority and endeavoring to sell this property I agree to pay you out of the first money received on the sale a commission of ... the price accepted if a purchaser is procured during this period ... upon the terms named or any other terms, which I accept.

The trial court found that the listing agreement required a sale before plaintiff would be entitled to a commission. Iowa Rule of Appellate Procedure 14(f)(14) states; "In the construction of written contracts, the cardinal principle is that the intent of the parties must control; and except in cases of ambiguity, this is determined by what the contract itself says." Therefore plaintiff's commission depends not on what the usual practice might be, but rather what the parties intended by the terms of the contract in this particular instance. By the plain language of the agreement the commission was promised out of "the first money received on the sale" of the property.

As we noted earlier, the plaintiff had the burden to establish the existence of a binding contract in order to earn a commission. The trial court found that plaintiff failed to carry this burden. We cannot say that the evidence is contrary to the trial court's finding as a matter of law. *See Eldridge v. Herman*, 291 N.W.2d at 321. The language of the listing agreement clearly supports the trial court's conclusion that a sale was required before a commission was to be paid.

In this particular situation the failure of the buyer to perform a condition precedent had fatal consequences not only for the purchase agreement, but also for the commission to be earned under the listing agreement. The supreme court addressed a similar situation regarding a commission depending upon the sale of property under specified terms in *Mullenger v. Clause*, 178 N.W.2d 420, 428 (Iowa 1970).

> Even though the seller and the purchaser enter into a tentative agreement as to the terms of the sale, if a condition precedent to the contract's taking effect, such as a present cash payment, is not performed by the buyer, then the agent is not entitled to this commission for the purchaser is not ready, willing, and able to make the purchase on the terms proposed.

Because we agree with the trial court that a sale was required in order for a commission to be earned, we must now determine whether the trial court was correct in concluding no sale took place.

**III. Enforceability of Purchase Agreement.** The trial court specifically found that both Blasi and Sherman represented to Harold and Gladys Baughman that their signatures were required on the purchase agreement solely for the purpose of seeing whether Sherman could obtain the necessary financing. Both men emphasized this fact to the Baughmans when Gladys was reluctant to sign the agreement. They informed her that her signature would be their authority to obtain a loan on this specific piece of property. Neither Blasi nor Sherman mentioned anything to the Baughmans at this time that might have indicated that they considered the purchase agreement to have the same legal effect as a contract of sale. In fact, the evidence points to the contrary.

We agree with defendants that at the heart of this issue is the question why the Baughmans signed the purchase agreement. The trial court found, that the Baughmans agreed to sell Levelcrest Farm

to Sherman only on the condition that he first sell his own farm and thereby obtain the requisite financing, enabling him to operate and manage it himself. It is obvious that this condition was considered and demanded by the Baughmans before they would sell the farm to Sherman. It is Sherman's signature on the purchase agreement that demonstrates his acceptance of the condition set forth and understood at the time he signed the document. With this in mind, it is particularly important to note that Sherman himself said that the financing he eventually arranged was a different method than what was originally contemplated by not only the Baughmans, but himself.

■ The proper financing was a real and substantial condition to the Baughmans. The record shows that it was their intent that the entire transaction was materially dependent upon proper financing, which in turn would enable Sherman to singularly operate and manage Levelcrest. Baughman's performance therefore, was conditioned upon Sherman's compliance with the terms set forth in the purchase agreement. The failure of Sherman's compliance with these terms excused the Baughmans from their duty to perform. *See Miller-Piehl Equipment Co. v. Gibson Commission Co.*, 244 Iowa 103, 109, 56 N.W.2d 25, 28–29 (1952). The determinative factor in regard to when a contract for sale of real property has been entered into is the intent of the parties. *Fjelland v. Wemhoff*, 249 N.W.2d 634, 637 (Iowa 1977). The record clearly supports the trial court's finding that the Baughmans did not intend to be bound by the purchase agreement if the terms and conditions set fort therein were not fulfilled. We affirm that conclusion.

**IV. Binding the Corporation and Protection of Levelcrest Farms, Inc. under Iowa Code Section 496A.** Resolution of these issues in plaintiff's favor necessarily depends upon a finding that the listing agreement was binding when a buyer is merely ready, willing, and able; or, that the purchase agreement is binding between the Baughmans and Sherman. Because we have affirmed the trial court on both issues, we need not discuss these allegations.

The remaining issues decided by the trial court and raised on appeal relate to whether plaintiff forfeited his commission in that he breached his fiduciary duty and failed to advise defendants to seek tax advice prior to entering into a contract to sell the farm. Because we have decided that plaintiff did not earn his commission, we need not discuss whether or not he forfeited the same.

We hold that the trial court was correct in dismissing plaintiff's claims against the defendants and therefore affirm.

AFFIRMED.