Timothy Gene SMITH; Margie Smith; and Timothy Gene Smith As Parent and Next Best Friend of Jackie Smith, Appellants,

v.

AIR FEEDS, INC., Appellee.

No. 93–773.

Court of Appeals of Iowa.

April 26, 1994.

828

Don Beattie and Ed Skinner of Skinner, Beattie & Wilson, P.C., Altoona, for appellants.

Michael D. Huppert of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellee Air Feeds.

Heard by SCHLEGEL, P.J., and HABHAB and CADY, JJ., but decided by HABHAB, P.J., CADY, J., and SCHLEGEL, Senior Judge.*

CADY, Judge.

This is a products liability action instituted after Timothy Smith was injured while operating a punch press in the course of his employment for Putco, Inc. ("Putco"). Putco is located in Story City, Iowa, and manufactures automobile accessories. Smith was injured on September 26, 1989, as he was operating a Komatsu punch press. The press was connected to a feeder manufactured by Air Feeds, Inc. ("Air Feeds"), which fed metal into the press. Smith was making running boards at the time. The press was equipped with palm buttons to activate the ram of the press. The control panel of the feeder included a group of six round switches which controlled the various functions of the feeder. One switch controlled the clamping action of the feeder. The switch located immediately below was labeled "adjust stroke, FCP, PCF." In the PCF position,

the feeder was designed so that the press could control the feeder. In the FCP mode, the feeder could control the function of the press. While Smith had his left hand in the die area of the press, he reached with his other hand to the feeder control panel intending to turn the switch to loosen the clamping action of the feeder. Instead, he inadvertently turned the "adjust stroke, FCP, PCF" switch from the PCF mode to the FCP mode. This caused the press ram to activate, which severed his hand.

Putco purchased the feeder from Air Feeds in 1983. The Kometsu punch press had been purchased and delivered to Putco prior to delivery of the feeder. Putco did not have the necessary knowledge to connect the feeder to the press. Air Feeds initially provided assistance by sending Putco a typical interlock circuit design. After Putco continued to experience difficulties, Ron Mullins, an engineer with D.J. Engineering was contacted to connect the feeder to the press. Air Feeds suggested that Mullins be used. Mullins eventually developed an interlock design which overrode the palm buttons on the Komatsu press. This allowed the feeder to be used to activate the press ram through the PCF–FCP switch. Both Mullins and Air Feeds informed Putco the circuitry change was not safe. Airco Feeds recommended that point guarding be added to provide for the safety of the operator. Putco never followed the recommendation.

An expert witness employed by Smith expressed an opinion that the PCF–FCP switch was defectively designed because it could be confused with the other switches on the panel. He believed this design constituted a danger. There were other opinions expressed by experts that the warnings given by Air Feeds were incomplete and nonspecific.

Smith together with his wife and child filed the lawsuit against Air Feeds and Merlyn Okland, the president of Putco. Mullins, D.J. Engineering, and David Junttila, the former president of D.J. Engineering, were later added as defendants. The multicount petition alleged claims based on strict liability, negligence, breach of warranty and con-

* Senior judge from the Iowa Court of Appeals serving by order of the Iowa Supreme Court.

spiracy. The amended petition added claims based on breach of contract, negligent selection of contractors, and liability under the Restatement (Second) of Torts section 323 (1965).

Air Feeds moved for summary judgment. It claimed there was insufficient evidence to support an agency relationship with Mullins, D.J. Engineering, or Junttila. Air Feeds also claimed it had no duty of care to Smith because it was not involved in the design or modification of the electrical circuitry of the press and the feeder could not be used to activate the press without modifying the press circuitry.

The district court granted Air Feed's motion for summary judgment on three grounds. First, it found insufficient evidence of an agency relationship between Air Feeds and Mullins or D.J. Engineering. Secondly, it determined Air Feeds was not strictly liable because the alleged defect resulted from a modification to the press, which Air Feeds did not cause. Finally, the court found no liability based on negligence. It determined Air Feeds had no duty of care to Smith for injuries caused by the press. The court concluded that Air Feeds had insufficient knowledge of any dangerous condition of its feeder at the time of injury.

## I. *SUMMARY JUDGMENT*

■ Summary adjudication is appropriate only when the movant shows through pleadings, affidavits, and discovery that there is no genuine issue of any material fact. *Fell v. Kewanee Farm Equip. Co.,* 457 N.W.2d 911, 916 (Iowa 1990). In considering motions for summary judgment, the district court is required to view the record in a light most favorable to the nonmovant. *Anita Valley, Inc. v. Bingley,* 279 N.W.2d 37, 40 (Iowa 1979). We review with the same principles utilized by the trial court, and consider the entire record to determine the existence of a genuine issue of material fact and whether the law was correctly applied. *Adam v. Mount Pleasant Bank & Trust Co.,* 355 N.W.2d 868, 872 (Iowa 1984).

## II. *PRODUCTS LIABILITY*

■ Products liability law broadly refers to the legal responsibility for injury resulting from the use of a product. *Bingham v. Marshall & Huschart Mach. Co.,* 485 N.W.2d 78, 79 (Iowa 1992). It encompasses the theories of negligence, strict liability and breach of warranty. *Id.* Although each is a separate and distinct theory of recovery, the same facts often give rise to all three claims. The underlying theories ordinarily concern improper design, inadequate warnings, or mistakes in manufacturing. Actions for negligence focus on the reasonableness of the manufacturer's conduct, while the focal point of a claim for strict liability concerns the condition of the product. *See Aller v. Rodgers Mach. Mfg. Co.,* 268 N.W.2d 830, 835 (Iowa 1978). The thrust of a warranty claim is the failure of a product to properly function. *East River Steamship Corp. v. Transamerica Delaval,* 476 U.S. 858, 872, 106 S.Ct. 2295, 2303, 90 L.Ed.2d 865, 878 (1986).

■ A strict product liability action involves the manufacture of a defective product which is unreasonably dangerous to the consumer when used in a reasonably foreseeable manner. *See Osborn v. Massey–Ferguson,* 290 N.W.2d 893, 901 (Iowa 1980). It must be shown, however, that the product was not substantially modified or changed after leaving the possession of the manufacturer. *Id.* No liability can result where a product is rendered defective by an alteration or change beyond the control of the manufacturer. *Fell,* 457 N.W.2d at 918; Restatement (Second) of Torts § 402 cmt. g. This principle is equally applicable to claims founded on negligence and breach of warranty. 63 Am.Jur.2d *Products Liability* § 23 (1984).

The Air Feeds product in this case was not capable of activating a punch press unless the circuitry of the particular press it was connected with bypassed the controls of the press. The trial court concluded that Air Feeds was insulated from liability because the modifications made to the circuitry of the press, in turn, substantially modified the feeder.

■ Smith does not claim the defect in the feeder was created by the modifications

made for the press circuitry. To the contrary, he claims the defect was in the design of the feeder, and this alleged design defect existed at the time the feeder was sold to his employer. The alleged defect was the existence of a switch, nearly indistinguishable from the other control switches, which allowed the feeder to control the press. Although the extent and manner of control depended upon the circuitry system used to mate the feeder with the press, it was clearly possible to integrate the feeder with a press which allowed the feeder to operate the functions of the press.

Air Feeds did more than simply manufacture a component part of a punch press machine. *See generally Childress v. Gresen Mfg. Co.*, 888 F.2d 45, 48–49 (6th Cir.1989); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267, 272 (1977); 63 Am. Jur.2d *Products Liability* § 189 (1984); Restatement (Second) of Torts § 402A cmt. q. They manufactured a finished product specifically designed to be integrated with a nonspecific existing press. There were no special interlock instructions. The liability of Air Feeds, therefore, must be determined by the particular condition of their product, not the condition of the existing companion product.

■ Air Feeds is not shielded from liability simply because the companion product was modified during the interlock process. The important inquiry is broader than how the manufacturer may have intended the product to function. *See Chown v. USM Corp.*, 297 N.W.2d 218 (Iowa 1980). "A manufacturer must anticipate the nature of the environment in which the product will be used and [design against] the foreseeable risk attending the product's use in that setting." *Henkel v. R & S Bottling Co.*, 323 N.W.2d 185, 192 (Iowa 1982); *see Back v. Wickes Corp.*, 375 Mass. 633, 378 N.E.2d 964, 969 (1978). Thus, if an alteration can be anticipated or controlled by the manufacturer, or the particular use of the product is foreseeable, liability may be imposed. *See Fell*, 457 N.W.2d at 918; *Henkel*, 323 N.W.2d at 191; *Scott v. Allen Bradley Co.*, 139 Mich. App. 665, 362 N.W.2d 734 (1984) (manufacturer of switch which knew or should have

known would be used as a power press mode selector held liable for injury).

■ The determination of whether the particular use of a product was reasonably foreseeable to the manufacturer is generally a question of fact for the jury. *Kalik v. Allis–Chalmers Corp.*, 658 F.Supp. 631, 635 (W.D.Pa.1987). In this case, it was error for the trial court to conclude as a matter of law that the modifications to the press circuitry shielded Air Feeds from liability. Air Feeds manufactured its feeder to be mated with a nonspecific press. They provided no specific interlock instructions. The product was designed in a manner which allowed it to control the press. We believe, under the circumstances presented, a fact question was generated whether the particular use of the feeder was reasonably foreseeable. This issue of fact is germane to all the product liability claims, and precludes summary judgment.

### III. *Agency*

■ An agency relationship can be established by expressed, implied, or apparent authority. *See Clemens Graf Droste Zu Vischering v. Kading*, 368 N.W.2d 702, 711 (Iowa 1985); *Fort Dodge Creamery v. Commercial State Bank*, 417 N.W.2d 245, 246 (Iowa App.1987).

■ The existence of an agency is ordinarily a fact question, but there must be substantial evidence to generate a jury question. *Chariton Feed and Grain, Inc. v. Harder*, 369 N.W.2d 777, 779 (Iowa 1985). Direct evidence, however, is not required. *Menzel v. Morse*, 362 N.W.2d 465, 475 (Iowa 1985). Agency may be proven by the words and conduct of the parties, together with all the circumstances of the particular case. *Id.*

■ Our review of the record supports a genuine issue of fact on the claim of an agency, both actual and apparent. Putco lacked the technical knowledge to link the feeder to their press, and looked to Air Feeds for help. Mullins became involved in connecting the feeder to the press at the request of Air Feeds. Putco believed Mullins was an Air Feed's engineer. Air Feeds repeatedly identified Mullins as their engi-

neer. Mullins considered Air Feeds to be a customer and reported to Air Feeds. An expert witness opined that it was not unusual in the industry for a feeder manufacturer to provide personnel to integrate feeders with presses. Although there is evidence which casts doubt on the existence of an agency relationship, our task is not to resolve the issue. We conclude a jury question was generated.

## IV. *PRESERVATION OF ERROR*

Smith raises a host of additional issues on appeal not decided by the trial court in its summary judgment ruling. These issues concern the other grounds for recovery against Air Feeds set forth in the pleadings. The trial court dismissed all the claims against Air Feeds, without specifically addressing each ground alleged in the petition. No motion under Iowa Rule of Civil Procedure 179(b) was made to enlarge the findings of the trial court.

Issues must ordinarily be presented to and passed upon by the trial court before they may be raised and adjudicated on appeal. *State Farm Mut. Auto. Ins. Co. v. Pflibsen*, 350 N.W.2d 202, 207 (Iowa 1984). Since we reverse the grant of summary judgment on the grounds addressed by the trial court, it is unnecessary to consider the appellate issues not considered by the trial court. We reinstate the petition against Air Feeds and each claim of liability. This, however, is not an endorsement of the broad pleadings in this case.

**REVERSED AND REMANDED.**