R. Douglas POWELL, Sheriff of Logan
County, State of Oklahoma,
Appellee,

v.

FOUR THOUSAND SIX HUNDRED
DOLLARS ($4,600.00) U.S.
CURRENCY, Defendant,

Martin and Robyn Hoel, Appellants.

No. 84445.[1]

Court of Appeals of Oklahoma,
Division No. 1.

May 30, 1995.

Certiorari Denied Sept. 20, 1995.

Gaylon C. Hayes, Oklahoma City, for Appellants.

James R. Blevins, Jr., Assistant District Attorney, Guthrie, for Appellee.

### MEMORANDUM OPINION

CARL B. JONES, Judge:

Late in the evening of February 14, 1994, Martin and Robyn Hoel and their children, while driving home from a Valentine's Day dinner, came upon what they thought was money scattered along a Logan County road. The Hoels knew friends who lived nearby, and quickly drove there; and, while Mrs. Hoel and the other children stayed behind,

1. The designation of parties here conforms to the caption of the action in the trial court, with the additional designation of Appellants as contestants of the relief sought by the county sheriff in the trial court. *See* 20 O.S.1991 § 3002; Rule 1.16(B), Rules of Appellate Procedure, 12 O.S. 1991, Ch. 15, App. 2.

and Mrs. Hoel contacted the authorities, Mr. Hoel and his eldest son drove back to where they had seen the money.

Shortly thereafter, a deputy sheriff from Logan County arrived on the scene, and Mrs. Hoel returned there. Mr. Hoel assisted the deputy in his search for the money, which yielded $4,600 in hundred dollar bills. Before he departed, both Mr. and Mrs. Hoel told the deputy that they wanted the money if the authorities could not locate its rightful owner.

Over six months later, the Logan County Sheriff commenced this action to obtain permission to deposit the found money into the Sheriff's Training Fund. Appellants appeared and objected. At the subsequent evidentiary hearing, Mr. Hoel testified that he and his son returned to the place they had discovered the money in order "to secure the area," by which he meant that he wanted to "[m]ake sure nobody else comes along and picks it up ... [W]e wanted to make sure nobody touched it."[2] Mrs. Hoel returned with her friends to the scene. The deputy arrived, and learned from the Guthrie police that no robbery had been reported. Apparently Mrs. Hoel picked up one or two of the bills, which the deputy examined for signs of forgery. Deciding that the money was indeed genuine legal tender, the deputy then instructed the Hoels not to pick up any more money, because he wanted to check it for fingerprints and drug traces. [Tr., pp. 15, 19–20.]

■ Appellants rely on positive and common law defining a finder's rights to assert their claim to the money. By statute, if one chooses to take charge of lost goods he finds, he acquires both the rights and the obligations of a bailee for hire of the property owner. 15 O.S.1991 § 511.[3] *See Moral Insurance Co. v. Cooksey Tire & Battery Service*, 285 P.2d 223, 226 (Okla.1955). And, it is a basic maxim of the law that a finder of property acquires rights in found property which are superior to all claims except that of the rightful owner. *State v. Clark*, 8 Okla. Crim. 432, 128 P. 161, 163 (1912).

Appellee contends this case should be governed by 22 O.S.1991 § 1325, which provides that a sheriff may apply for court authority to deposit money "which has come into his possession" into the Sheriff's Training Fund.[4] Appellants, by their own admission, assert no *prior* ownership of the money (i.e., prior to their discovery on the night of February 14, 1994), and so Appellee argues that the "owner" of the money has not claimed it, and Appellants cannot "prove ownership," within the meaning of § 1325(A) and (E), respectively.

Neither Appellants nor Appellee dispute that the money was truly "lost," i.e., that somehow the original owner(s) parted with the money involuntarily and unintentionally, and that he or she or they did not know that it lay scattered along the road where the Hoels discovered it. *See Eldridge v. Herman*, 291 N.W.2d 319, 323 (Iowa 1980). Two issues are presented here for us to resolve: first, whether the finder of lost property may qualify as an "owner" of the property, and so obtain sufficient legal rights in the property

---

2. Tr., pp. 14–15.

3. Section 511, 15 O.S.1991, provides:

    "One who finds a thing lost is not bound to take charge of it; but if he does so, he is thenceforward a bailee for the owner, with the rights and obligations of a bailee for hire."

4. The relevant portion of § 1325 provides:

    "A. Any sheriff is authorized to ... deposit in the Sheriff's Training Fund, as hereafter provided, all money or legal tender of the United States which has come into his possession, whether said ... money be stolen, embezzled, lost, abandoned or otherwise, the owner of said ... money being unknown or not having claimed the same, and which the sheriff has held for at least six (6) months, and such ... money, or any part thereof, being no longer needed to be held as evidence or otherwise in connection with any litigation.
    " * * *
    "E. A sheriff, having in his possession money or legal tender under the circumstances provided in subsection A above, prior to appropriating the same for deposit into the Sheriff's Training Fund, shall file an application in the district court ... requesting the court to enter an order authorizing him to so appropriate said money for deposit ... At the hearing [on the application], if no one appears to claim and prove ownership to [sic] said money or legal tender, the court shall order the same to be deposited by the sheriff in the Sheriff's Training Fund ..."

which would defeat a sheriff's application under 22 O.S.1991 § 1325; and, second (assuming we give an affirmative answer to the first issue), whether the Hoels qualify as "finders" of the money.

## I.

■ The first issue has not been previously decided in this state. However, we conclude that the Appellants, if they qualified as finders of the money, acquired a sufficient ownership interest in the money to be "owners" of the money as that term is used in the unclaimed property statute. The Legislature did not intend to negate the common or statutory law granting legal rights to finders of lost property. By interpreting the unclaimed property statute in this manner, both legal principles at issue here can be harmonized without undue violence to either. The Alabama Court of Civil Appeals reached a similar result in *Smith v. Purvis*, 474 So.2d 1131 (Ala.Civ.App.1985), in which the court rejected the sheriff's assertion of an unclaimed property ordinance as a defense to two brothers' action against him for conversion. The plaintiffs had found a boat lying beside an Alabama highway and took possession of it. Coming upon two deputy sheriffs, they stopped to discuss the boat, and the deputies (over the brothers' objection) impounded the boat and held it to await a claim from the true owner. Yet, when no such claim was presented, the sheriff apparently refused to relinquish the boat to the finders. In Alabama, as here, a statute exists which renders one who takes charge of lost property a depository for the true owner.[5] Recognizing that such statute could be read to conflict with the local claimed property ordinance, the court concluded that the two acts could be harmonized by a construction

> that it was the intention of the legislature in the one instance to provide for the disposition of lost property found by a citizen who did not wish to keep it and in the other instance to authorize a citizen who found lost property and wanted to keep it

to do so against the wishes of everyone except the true owner.

*Smith,* 474 So.2d at 1133.

## II.

■ Having decided that a finder of lost property acquires rights which are superior to the sheriff's rights under the unclaimed property statute, we must next determine whether Appellants qualify as "finders" under the circumstances presented in this case. It is stated by general authorities that the finder of lost property is one who first reduces it to possession, *e.g., see* 1 Am.Jur.2d, *Abandoned, Lost, and Unclaimed Property* § 18 at 18 (1962), or at least such possession of the thing as its nature and circumstances will permit, 1 36A C.J.S., *Finding Lost Goods* § 2 (1961). Section 511 of title 15 expresses a related notion in its opening clause; thus, in order to obtain the rights of a finder under that statute, one must "take charge" of it.

■ In this case it is undisputed that Mr. Hoel and his eldest son returned to where the money had been discovered in order to prevent any third person from interfering with recovery of the money. We should not penalize the Appellants for their legitimate concern that the money might have some evidentiary value. In fact, the deputy who subsequently appeared on the scene directed Appellants *not* to pick up the money, precisely because of the possibility it might bear fingerprints or trace evidence. Under these rather unique circumstances, we hold that Appellants "took charge" of the money before the deputy sheriff arrived, and so acquired the rights of a finder under our statutory and common law. *See Eads v. Brazelton,* 22 Ark. 499, 511, 79 Am.Dec. 88 (1861), discussed in *Hener v. United States,* 525 F.Supp. 350, 354 (S.D.N.Y.1981) ("The [Arkansas] Court made clear that 'Brazelton's act of possession need not have been manual,' but he was required to take 'such possession of (the wreck and cargo) as their nature and situation permitted.' "); *cf., Eads,* 22 Ark. at 512 (conduct short of actual possession may constitute "the only effectual guard" over found property).

---

5. Ala.Code § 35–12–1 (1975).

The trial court judgment in favor of Appellee is reversed, and this cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

HANSEN, P.J., and JOPLIN, J., concur.

