**Carroll ETCHEN, Appellant,**

v.

**HOLIDAY RAMBLER CORPORATION and Dexter Axle, Appellees.**

**No. 96–0498.**

Court of Appeals of Iowa.

Nov. 25, 1997.

As Corrected March 23, 1998.

Karla J. Shea and Gene Yagla of Yagla, McCoy & Riley, P.L.C, Waterloo, for appellant.

Beth E. Hansen and Larry J. Cohrt of Swisher & Cohrt, Waterloo, for appellees.

Heard by CADY, C.J., STREIT, J., and HABHAB, * Senior Judge.

STREIT, Judge.

A buyer seeks warranty damages from a conflagration that ravaged his motor home during the first year of ownership. After a

* Senior judge assigned by order pursuant to Iowa Code § 602.9206 (1997).

bench trial, the trial court found the buyer failed to establish seller and manufacturer had breached express warranties and he failed to prove his other tort claims. The court did not have substantial evidence to support its conclusion the plaintiff did not prove breach of express warranty. After reviewing the evidence presented to the trial court, we find the plaintiff proved his breach of warranty claims and reverse.

### I. Background & Facts.

Carroll Etchen purchased a new Holiday Imperial motor home on June 25, 1992. It was manufactured by defendant, Holiday Rambler Corporation, and sold by Paine Recreational Vehicles for $79,685.80. Defendant, Dexter Axle manufactured the rear axle.

On April 21, 1993, Etchen was driving the motor home, heard a thump underneath the motor home, and in the rear view mirror saw a piece fly out from underneath the motor home. He was bringing the vehicle to a stop when he heard a tire blow and then realized the rear tire had erupted in flames. While trying to extinguish the fire, Etchen noticed there was a piece of the brake drum caught between the axle assembly and the tire. The piece was on fire and he could not extinguish it. The motor home and its contents were ruined. The total loss was $84,372 with a salvage value of $2000.

Both defendants expressly warranted the motor home. Holiday Rambler's warranty was for the first twelve months or 12,000 miles. Dexter Axle's was for one year from the date of purchase. At the time of the fire, Etchen had driven the motor home 3400 miles and owned the motor home for less than ten months. Both defendants refused to perform their warranties.

Etchen filed a petition against Holiday Rambler and Dexter Axle alleging breach of express warranty and other tort claims. At the bench trial, all experts agreed the origin of the fire was in the vicinity of the left rear tag axle bearing housing system. They also agreed that the cause of the bearing failure and fire was improper adjustment of the bearing assembly, known as improper "pre-load." This means that the adjusting nut on the end of the spindle under the retainer and the end cap has been torqued too much causing increased friction. The friction causes the grease to break down and the lack of lubrication eventually causes over-heating causing the unit to break apart. The fact of who improperly adjusted the bearing assembly is in dispute.

The case was submitted on September 1, 1995. The court issued its ruling on February 21, 1996, finding neither Holiday Rambler nor Dexter Axle liable.

### II. Standard of Review.

A law action is reviewed for correction of errors. Iowa R.App. P. 4. The trial court's findings of fact have the effect of a special verdict, Iowa R.App. P. 4, and are binding on us if supported by substantial evidence. Iowa R.App. P. 14(f)(1); *Schmitz v. Crotty*, 528 N.W.2d 112, 115 (Iowa 1995) (citation omitted).

### III. Trial Court's Conclusions of Law

■ **A. Burdens.** The burden was upon Etchen to plead and prove his breach of warranty claim. *Drager v. Carlson Hybrid*, 246 Iowa 957, 959, 69 N.W.2d 58, 59 (1955). The trial court concluded he had not. When the trial court, following a bench trial, denies recovery because a party failed to sustain its burden of proof on an issue, we will not interfere with the trial court's judgment unless the party has carried its burden as a matter of law. *Schmitz v. Crotty*, 528 N.W.2d 112, 115 (Iowa 1995). It was Dexter

Axle's burden to prove the allegations of their affirmative defense—that they were not liable for breach of warranty because the product had been altered after it left the factory. *See Rodgers v. Baughman*, 382 N.W.2d 714, 716 (Iowa App. 1985). The court did not rule on that issue. Because we find Etchen carried his burden and Dexter Axle did not, we reverse.

### B. Express Warranties.

■ *i. Breach of Express Warranty by Holiday Rambler.* Etchen had to prove the following facts to meet his burden under the Holiday Rambler express warranty: (1) an express warranty was created; (2) the motor home was used for its intended purpose; (3) the motor home was not free from defects in materials and workmanship; (4) the defects appeared within a period of twelve months or 12,000 miles, beginning on the date the motor home was delivered to the first retail purchaser; (5) Etchen notified Holiday Rambler or one of its authorized dealers of the defect within five days discovery of the defect; (6) Etchen returned the motor home to the dealer promptly, as scheduled; (7) Etchen paid any freight costs, import duties or fees involved; and (8) Holiday Rambler failed to

perform repairs to the motor home as promised in the warranty. *See Drager,* 69 N.W.2d at 59.

■ An express warranty was created. *See* Iowa Code § 554.2313. Holiday Rambler warranted the mobile home to be free from defects in material and workmanship. It is not disputed Etchen was using the motor home for the recreational purpose it was intended. Etchen sufficiently proved the motor home was not free from defects by showing it burst into flames. The defects appeared within a period of twelve months of the time Etchen was delivered the vehicle. Etchen notified Holiday Rambler and one of its authorized dealers of the defect within five days of discovery. Etchen returned the motor home to the dealer promptly. Holiday Rambler failed to perform repairs to the motor home as promised in the warranty.

### ii. Dexter Axle's Breach of Express Warranty.

■ Etchen had to prove these facts to meet his burden for breach of warranty against Dexter Axle: (1) an express warranty was created; (2) the motor home was not free from defects in materials and workmanship; (3) the defects appeared within a period of twelve months, beginning at the date of purchase; and (4) Dexter Axle failed to replace or repair the defect to the motor home as promised in the warranty.

■ An express warranty was created. *See* Iowa Code § 554.2313. Etchen proved the bearing failure was caused by either defective material or defendants' workmanship when he proved the cause of the blaze. The defects appeared within a period of twelve months from the date Etchen purchased the motor home. Last, Dexter Axle failed to fulfill its promise to replace or repair the defect to the motor home as promised in the warranty.

### IV. Dexter Axle's Affirmative Defense.

■ **A. Changed or Altered Product.** Liability for breach of warranty, like liability for strict liability, can be avoided if the product was substantially modified or changed by an alteration beyond the control of the manufacturer. *See Smith v. Air Feeds, Inc.* 519 N.W.2d 827, 830 (Iowa App.1994)(citing 63 Am.Jur.2d Products Liability § 23 (1984)). The difference between strict liability and breach of warranty claims is in the burdens of proof. In a strict liability claim, the plaintiff must establish the product was expected to and did reach the plaintiff without a substantial change in condition from the time it was sold. *Aller v. Rodgers Mfg. Inc.,* 268 N.W.2d 830, 837–38 (Iowa 1978). In a breach of express warranty action, however, the defendant can assert and prove as an affirmative defense the product was altered or modified after it left the factory and avoid liability. *See Rodgers,* 382 N.W.2d at 716.

This affirmative defense was echoed in Holiday Rambler and Dexter Axles' warranty exclusions. Holiday Rambler's warranty did not apply to items added or changed after the motor home left its possession. Dexter Axle warranty excluded liability for: (1) Any damage whatever if caused by or related to any alteration of the axle; or (2) improper wheel nut torque.

■ **B. Insubstantial Evidence to Prove Etchen Tampered With the Product.** In deciding whether Dexter Axle proved its affirmative defense by substantial evidence, we must first delineate what substantial evidence is. Substantial evidence is more than a scintilla, but does not rise to the level of a preponderance of the evidence. *In re McIntyre,* 550 N.W.2d 457, 460 (Iowa 1996). A finding is supported by substantial evidence if it may be reasonably inferred from the evidence. *Id.* The question an appellate court faces is not whether the evidence might support a different finding, but whether the evidence supports the findings actually made. *Tim O'Neill Chevrolet v. Forristall,* 551 N.W.2d 611, 614 (Iowa 1996). *Id.* In discussing the substantial evidence standard in the context of a negligence case, we stated substantial evidence must be either direct or circumstantial, not merely a surmise or conjecture. *See Thacker.v. Eldred,* 388 N.W.2d 665, 670 (Iowa App.1986).

Although the court does not set out its reasoning, we assume the court reasoned Etchen introduced barium and, thus, was the last person to adjust the bearings, and cause

the bearing failure and fire destruction of the mobile home. If this was true, Dexter Axle had proved its affirmative defense. The trial court's conclusion is based on faulty deductions. This finding is not supported by evidence, either direct or circumstantial, but is based on surmise and conjecture. A reasonable person would not make this inference from the evidence presented to the trial court.

In finding Dexter Axle proved its affirmative defense the court made the following conclusions: (1) barium was not present in the bearings in Etchen's mobile home when it left Dexter Axle because a sample of virgin grease used over a year later at Dexter Axle does not contain barium; (2) Holiday Rambler did not adjust the bearings; (3) barium was not introduced by the fire or by environmental contaminants while being stored after the fire because barium was found in the right bearings which were unaffected by the fire; and (4) Etchen repacked or adjusted the bearings.

First, the conclusion barium was not present in the grease Dexter used on Etchen's motor home because barium is not present in the grease Dexter Axle used over a year later is unsupported by substantial evidence. This was the first time Dexter Axle had ever tested the grease used on its axles. Dexter Axle's chief engineer testified it was possible Dexter Axle's virgin grease came to Dexter Axle with contaminants in it. The virgin grease tested was not the same batch of grease used on the Etchen vehicle and offers little support to the claim the grease used in the Etchen vehicle did not start out with the barium traces. Dexter Axle has no way of knowing whether barium was present in the grease used on Etchen's vehicle.

■ Second, the owner of Paine RV testified he did not repack the bearings. The court found this testimony credible, although it did not rule on credibility. The district court has a better opportunity than the appellate court to evaluate the credibility of witnesses. *Id.* This court is prohibited from weighing the credibility of witnesses. *Grinnell Mut. Reins. Co. v. Voeltz,* 431 N.W.2d 783, 785 (Iowa 1988). Even if true, however,

the fact that Paine RV did not repack the bearings does not prove Etchen did.

Third, the conclusion barium was not introduced by the fire or environmental contaminants while being stored at Leon and Gene's Garage because barium was present in the right bearings, which had been sealed throughout the fire, is not supported by substantial evidence. The court was not correct in its finding the right side of the Etchen unit was left intact. The right side of the tag axle was disassembled at Leon and Gene's Garage and the parts laid on the floor for some time before they were shipped. The chief engineer from Dexter Axle admitted the barium in the grease could have been introduced when the unit was taken apart at Leon & Gene's. None of these facts support a finding, with any certainty, the axle had been contaminated by Etchen.

Fourth, Etchen testified he did not put any grease in the tag axle and did not touch the bearings on his motor home. The district court did not specifically rule on Etchen's credibility. Even if the court thought Etchen incredible, this is not direct or circumstantial evidence of Etchen adjusting the bearings. The defendants trying to prove their affirmative defense must do more than merely pointing to the plaintiff and saying he is not truthful in his denial of wrongdoing. Also, this is not a case where the trial court has simply made a determination as to which side is the more credible in first-hand versions of what occurred. None of the alleged circumstantial evidence in support of defendants' affirmative defense rises to the level of substantial evidence. The court's finding Etchen tampered with the bearings was not supported by substantial evidence.

### V.  Confusion of Technical Terms.

The trial court confused technical terminology. Although the confusion of the terminology is not grounds for reversal here, it is necessary to point out these distinctions because they influenced the court's mistaken legal conclusions. The court confused the spindle nut and the lug nuts on the tag axle unit. Expert witnesses explained in the assembly of the tag, the adjustment of spindle nuts, not lug nuts, affects pre-load.

In the court's findings of fact, the trial court found:

> [Mr. Etchen] also tightened the lug nuts at least once and perhaps twice. He has his own torque wrenches and believed he tightened it to 50 or 60 P.S.I.

Later, in the findings of fact, the court determined:

> The bearings on the spindle are not designed for 50 to 60 P.S.I. pressure. The significance of the torque is that if there is too much torque putting too much tension on the bearing, it causes the bearings not to ride on a film of grease and the friction of the bearings melts the grease down and causes metal to metal contact which quickly results in bearings being burnt out.

Etchen never testified to what degree he tightened the lug nuts. He never stated he tightened the spindle nuts. It is unclear whether the court was referring to Mr. Etchen's actions when it stated the bearings on the spindle are not designed for 50 to 60 P.S.I. The court was incorrect in its usage of the standard of measure. Both the spindle nut and lug nuts were tightened to foot pounds, not pounds per square inch.

Etchen proved Holiday Rambler and Dexter Axle breached express warranties. Substantial evidence does not support the finding Etchen adjusted the bearings, and thus, defendants failed to prove their affirmative defense. For these reasons, the decision of the trial court is reversed.

The district court did not make specific findings as to the damages Etchen would be entitled to had he proved his cause of action. The district court is directed to enter a judgment in conformance with these findings.

**REVERSED.**