**IN THE COURT OF APPEALS OF IOWA**

No. 15-2115
Filed April 5, 2017

**BIANCA LORRINE PULLIAM,**
    Plaintiff-Appellee,

**vs.**

**DANNY MAC,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Allamakee County, Barry S. Mueller, Magistrate (trial), and Stephanie C. Rattenborg, District Associate Judge (appeal).

A towing company appeals from a judgment entered against it in a replevin action. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

Patrick A. Ritter of Elwood, O'Donohoe, Braun, & White, LLP, West Union, for appellant.

James Burns of Miller, Pearson, Gloe, Burns, Beatty & Parrish, P.L.C., Decorah, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

The unwanted tow of a thirteen-year-old van set off a bizarre series of events that spawned a lawsuit, an appeal to the district court, a grant of discretionary review by our supreme court, and finally, transfer to this court. Defendant towing company Danny Macs[1] appeals from a judgment entered against it in a replevin action brought by the owner of the van. We affirm in part, reverse in part, and remand with directions.

### I. *Background Facts and Proceedings*.

As best as we can glean from conflicting testimony, the salient facts are as follows. During the early morning hours of June 23, 2013, an unprecedented flood inundated Waukon. Plaintiff Bianca Pulliam was living in a downtown apartment above *The Standard* newspaper offices at the time. She was awakened when a neighbor knocked on her door and told her to get up because vehicles were being towed from the building's parking lot. Pulliam's van, a 2000 Pontiac Montana purchased for $1500 a few months earlier, was parked in the lot behind the building in a space authorized for parking by tenants of the building.

Pulliam went down to investigate. Her van had not yet been towed. When she attempted to get in the van to move it she was told by a woman standing in front of the van,[2] "No, we can't allow you to start—allow you to start the vehicle

---

[1] The defendant towing company is identified as "Danny Mac" in the pleadings, but according to the company's letterhead on letters entered into evidence at trial, the towing company's name is "Danny Macs Towing," which is a name Burington Repair, LLC, does business as. The company is solely owned by Brian Burington and his wife. During the trial, the company was also referred to as "Danny Mac's Towing." We will refer to the company as "Danny Macs" in this opinion.

[2] In his order, the magistrate refers to this person as a uniformed police officer. Pulliam testified she did not know who the woman was but thought "she was just out there with the tow company."

up." Pulliam said she would move the van, but she was told, "No we can't allow you to start 'em up due to the water will get in your engine. But we're moving them all out to the main street for cleanup, until we clean up the parking lot." She was told that she could pick up the van on the main street. Pulliam's van was then towed. Pulliam went back to her apartment to change her clothes. About an hour later she went to the main street in search of her van. None of the vehicles from the building's parking lot were there. She called the police, and not knowing the identity of the company that towed her van, she called several towing companies and was eventually informed her van was at Wilken Auto Salvage (Wilken's).

Brian Burington, owner of Danny Macs, testified he had been called by the Allamakee County Sheriff's Office dispatch to remove vehicles from the back parking lot behind *The Standard* and downtown businesses because everything had been flooded there. "[T]hey wanted [all the vehicles] out of downtown for cleanup . . . they didn't want them sittin' downtown . . . creatin' any type of health hazard." Danny Macs took all the towed vehicles to a lot it was renting from Wilken's. Burington stated all the vehicles towed were charged $75, "and the first week they sat there we weren't going to charge any storage due to the circumstances."

According to Pulliam, she went to the salvage yard to retrieve her van and was told she had to pay $175 for the tow.[3] Pulliam refused to pay the charge, and in any event, she did not have the money to pay it. She called the police to

---

[3] The testimony is conflicting with regard to the tow charge. Pulliam says it was $175; Burington says it was $75. No bill was offered into evidence.

see if she could get the van back without paying the tow charge. That met with no success. A few weeks later, after she had raised the money to pay the tow charge, she was told the cost to retrieve her van had gone up because accrued storage fees had been tacked on.[4] Pulliam attempted to contact Waukon's mayor with no success. Eventually, a frustrated Pulliam went back to the salvage yard and saw that her van was outside of the yard's gate. Engaging in an act of self-help, she got in the van, started it up, and drove off. Unbeknownst to Pulliam, Danny Macs then reported the van as stolen. Shortly thereafter, she took the van to a Prairie du Chien automotive repair shop to have the flood damage repaired. The van was muddy and water had been in it. The battery was replaced, the gas tank was dropped, and the windshield wiper motors were replaced because of water damage. Pulliam did not have the money to pay for the $1600 in repairs, so the van sat at the shop until the end of 2013.

Eventually Pulliam paid for the repairs and drove the van to Chicago for a weekend and then drove back Calmar, Iowa, where she was then living. After being pulled over by police, she was told that the van had been reported stolen. She exclaimed, "How? I'm the owner of the vehicle." She was told Danny Macs had reported it stolen. Up to this point, she had not known that it was Danny Macs that had towed her van to Wilken's. Burington testified "Allamakee Sheriff's Office dispatch called us and said Calmar [Police Department] had a van that was in the ditch and they got it out and they had it pulled over and it was the van—it was [Pulliam]'s van that he had over there." Burington was told that Pulliam was driving the van. Burington went to Calmar and picked up the van

---

[4] There is no evidence in the record regarding the amount of storage charges.

and brought it back to Waukon.  The van then sat in a storage lot for the next year.  By this time, Pulliam had moved back to Waukon.

The sequence of the following events is as muddy as the Waukon flood waters but not critical to our analysis.  According to Burington, about a year after the van was towed from Calmar, he received a phone call from Pulliam asking if

> we had possession of her van and we told her we did but now she'd have, you know, extra towing costs due to us going over to Calmar and bringing it back.[5]  And then with the prior $75 charge from before, you know, that would all have to be paid and—and then at that time, you know, she didn't have the money for anything and she didn't feel it was right that it got towed in the first place and that's kind of where it got left off then.

In January 2015, Danny Macs sent a letter to Pulliam informing her that her balance was "seriously delinquent."  In lieu of a cash payment, Danny Macs offered to accept title to the van as a settlement on the balance owed.[6]  A February 4, 2015, letter to Pulliam from Danny Macs stated: "Per the phone conversation you had stated to dispose of the vehicle in lieu of the tow bill and storage fees from June 2013."[7]  The letter requested Pulliam to either sign the vehicle's title over or sign a form giving Danny Macs permission to dispose of the vehicle.

At some point, a Waukon police office came to Pulliam's home and told her that Danny Macs "was giving them trouble about the vehicle been sittin' there so long and they want to get rid of it," and "[t]here was a paper for [her] to sign [her] title over for [Danny Macs] to dispose of the vehicle."  Pulliam said she would do no such thing because the van should not have been towed in the first

---

[5] The cost of the tow from Calmar is not in the record.
[6] The amount of the "balance owed" is not in the record.
[7] The amount of the storage fees is not in the record.

place. The officer told her, "Well, I'm the one [who] authorized for the vehicles to be moved to the main street for cleanup." After Pulliam told the officer Wilken's had tried to charge her to get the van back, the officer responded, "They tried to charge you to get your vehicle back?" Pulliam said, "Yes," and the officer told her to hold on and give him "about an hour and [he'd] be back." When he came back, the officer told Pulliam the towing company was not happy, but she could have her van back if she just paid the tow charge. He suggested that before paying the charge, she should see if the van would start because it had been sitting for so long.

Pulliam called Wilken's and said she wanted to come out to see if the van would run and to "try to pay [her] vehicle." She was told no one was there at the time to take her to her van, and she was asked to call back on Thursday or Friday. She called back on Thursday and was told Wilken's no longer had the van because Danny Macs had picked it up.[8] Pulliam called Danny Macs and was told the van was on Burington's property near his house. Pulliam went to the Burington home and spoke with Burington. He told her, "Well, I had your vehicle here two days ago. When I returned home, I seen tire tracks in the mud and the vehicle is gone. Someone stole it." At the trial Burington was asked if he knew where the van was. He said:

> Wish I did 'cause it—We had it up until the last time I talked to [Pulliam] and then—then she had said that Wilken's had given our information to her—to her as to where the vehicle was. And then it was maybe three, maybe four days after that that that van come up missin' again.

---

[8] Burington testified he stored the van on his business property after towing it from Calmar to Waukon.

Burington did not report to the police that the van had been stolen again.

Seeking possession of the van, Pulliam filed a replevin action in the small claims division of the Iowa District Court for Allamakee County in April 2015. She named Danny Macs and Wilken's as defendants.[9] She asserted she owned the van and its value was $3000, and she requested possession of the van. The defendants denied Pulliam's claims and filed a $5000 counterclaim for the costs of towing and storing the van.[10] The court ordered the counterclaim would not be heard in the replevin action. *See* Iowa Code § 643.2 (2015) ("[T]here shall be no joinder of any cause of action not of the same kind, *nor shall there be allowed any counterclaims.*" (emphasis added)).

The case was tried to a magistrate in June 2015. After the parties rested, the court asked: "This would be a bailment case; correct? (Inaudible) agree?" Counsel for Pulliam responded: "In part." Counsel for Danny Macs replied: "In part, I think with purposes of—(inaudible) calculation." The magistrate's August 2015 order granted Pulliam's request for replevin. Since the van was not available to return, the court entered judgment in favor of Pulliam and against Danny Macs in the amount of $3000 plus costs and interest.

Pursuant to Iowa Code section 631.13, Danny Macs appealed to the district court. It challenged dismissal of its counterclaim. It also noted the court had determined a bailment was created, and since the case was decided on a bailment theory, it should have been allowed to present evidence of the costs it incurred in maintaining the bailment. It asked that the case be reviewed de novo,

---

[9] Wilken's was dismissed out by stipulation of the parties.
[10] Nothing in the record shows how this figure was computed.

that it be allowed to present new evidence, and that it be allowed to submit a brief on appeal.

Written briefs were not filed, and the appeal was heard without further evidence. *See* Iowa Code § 631.13(4). The district court reviewed the record de novo. *See Sunset Mobile Home Park v. Parsons*, 324 N.W.2d 452, 454 (Iowa 1982). In November 2015, the district court entered its order affirming the magistrate's judgment. After reviewing the record, the district associate judge (DAJ) concluded substantial evidence supported the magistrate's findings, finding the only error was in the magistrate's ruling regarding the value of the van, which should have been the value of the van at the time it was taken. However, the court noted the magistrate "addressed this matter with counsel at the conclusion of the hearing, and both parties agreed the van would be valued at $3000."

Danny Macs applied to the supreme court for discretionary review pursuant to section 631.16. The supreme court granted the application in March 2016. The appeal was transferred to this court in January 2017.

## II. Standard of Review.

Our standard of review is for correction of errors at law. *See De Stefano v. Apts. Downtown, Inc.*, 879 N.W.2d 155, 164 (Iowa 2016) ("In a discretionary review of a small claims action, the nature of the case determines the standard of review." (citation omitted)). Our review of small claims actions tried at law is for correction of errors at law. *See id.* Replevin is an action at law. *See First Trust & Sav. Bank v. Guthridge*, 445 N.W.2d 401, 402 (Iowa Ct. App. 1989). The standard of review in a replevin action is for correction of errors at law. *See*

*Prenger v. Baker*, 542 N.W.2d 805, 807 (Iowa 1995). We are bound by the trial court's findings of fact so long as they are supported by substantial evidence in the record. *See Smith v. State*, 845 N.W.2d 51, 53 (Iowa 2014).

### III. Discussion.

### A. Pulliam's Request for Replevin.

"Replevin is a specialized statutory remedy with a narrow purpose designed to restore possession of property to the party entitled to possession." *Roush v. Mahaska State Bank*, 605 N.W.2d 6, 9 (Iowa 2000). "The gist of a replevin action is enforcement of plaintiff's right to immediate possession of the property wrongfully taken or detained." *Flickinger v. Mark IV Apartments, Ass'n*, 315 N.W.2d 794, 796 (Iowa 1982). "A wrongful detention occurs when the defendant wrongfully withholds or retains possession of the property sought to be recovered." *Id.* The plaintiff bears the burden of proving by a preponderance of evidence that he or she was entitled to possession at the time the action was filed. *See Marx Truck Line, Inc. v. Fredricksen,* 150 N.W.2d 102, 105 (Iowa 1967).

It is undisputed Pulliam owned the van. "The fact of ownership draws with it the right of possession. If nothing further appears, the law raises the presumption the owner is entitled" to its possession. *Varvaris v. Varvaris,* 124 N.W.2d 163, 165 (Iowa 1963). As between parties, "a lienholder's possessory right is neither waived nor destroyed where the involved personalty is involuntarily taken from him by the actual owner." *Iowa Truck Ctr., Inc. v. Davis*, 204 N.W.2d 630, 632 (Iowa 1973). If Danny Macs had a valid artisan's lien for the original towing and storage at the time the replevin action was filed, it would

have had a possessory interest in the van that could have trumped Pulliam's interest in immediate possession of the van.[11] But, that legal issue was not raised before the magistrate, on appeal to the DAJ, or to us. Issues not raised before or decided by the lower court will not be considered on appeal by this court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Although the magistrate's order, which was affirmed by the DAJ, does not specifically say so, in granting Pulliam's request for replevin, it may be inferred that the magistrate found that Pulliam was entitled to immediate possession of the van. *See Hubby v. State*, 331 N.W.2d 690, 695 (Iowa 1983). "Findings of fact are given a liberal construction favorable to the judgment." *Id.*

One who is not in possession of property of another or colluding as to keeping possession cannot be made liable in an action of replevin.[12] *See Carr v. King & Tomlinson*, 169 N.W. 133, 134 (Iowa 1918); *Coffin v. Gephart*, 18 Iowa 256, 258 (1865). Because the van was stolen a second time, Danny Macs no longer had possession of the van at the time Pulliam filed her replevin action. Under the circumstances, Pulliam's action was dead in the water upon filing. But again, this issue was not raised before the magistrate, on appeal to the DAJ, or

---

[11] The magistrate found:

> Since the City of Waukon and/or the police department is not a party to this action the court is not required nor need address the validity of the tow order to start with. Health and safety are legitimate reasons to tow a vehicle. What is unclear is why the owner who was present, able and willing to move the car in the first place was not first given an opportunity to do so. It is questionable that the original tow fee should have been the responsibility of the owner/plaintiff to begin with. But that is not an issue that need be addressed in this replevin action.

[12] Our supreme court has not determined whether an action for replevin may be based upon constructive possession. *See Roush*, 605 N.W.2d at 9. In any event, because the van was stolen from Danny Macs, Danny Macs could not have been found to have constructive possession of the van.

to us. Consequently, we do not consider the issue in our analysis. *See Meier*, 641 N.W.2d at 537. The magistrate found the van was not in Danny Macs's possession. Since the van was not available for return, the magistrate issued a judgment for its value, an option available under section 643.19. The magistrate's replevin judgment was affirmed by the DAJ.

On appeal to this court, Danny Macs contends this is a case of bailment—not replevin—and argues Pulliam "did not prove the elements of negligence to warrant a judgment against a constructive bailee." Danny Macs further argues the magistrate "clearly decided the case on a bailment theory," based upon the judgment. We disagree, for calling a tail a leg does not make it a leg.

Here, it is easy to see how the parties were steered off course into the waters of bailment. Despite the fact that the case was pled and tried as a replevin action, after the parties rested, the magistrate asked if the case was one of bailment, and the parties' attorneys agreed in part. Additionally, the magistrate included the following finding in his order:

> The court further finds that when the car was towed by Danny Macs the second time, a bailment was created. Danny Macs came into lawful possession of the van because law enforcement called them to tow it from Calmar. Since it was not a voluntary action by [Pulliam], it is a constructive bailment. The control and possession of the van was entirely held by Danny Macs and this business had a full transfer of the van and sole custody of it. As such, Danny Macs is responsible for the vehicles it has in storage. Liability for the missing car lies with [Danny Macs].

(Citation omitted.) Nevertheless, it is clear the magistrate's order is one founded upon the replevin action—not bailment or negligence. In affirming the magistrate's judgment, it is also clear the DAJ treated the case as one of replevin

and not bailment or negligence. Therefore, in deciding this appeal, we set aside the parties' bailment and negligence arguments.

Given the above discussion, we agree with the DAJ that substantial evidence supports the magistrate's factual findings. We therefore affirm the grant of Pulliam's request for replevin. And it follows that the magistrate properly denied Danny Macs's counterclaim. *See* Iowa Code § 643.2.

### B. Amount of the Judgment.

Danny Macs also appeals the amount of the judgment, contending that it does not represent the fair market value of the van and that he did not stipulate to the valuation. We agree.

The party found to be entitled to the property may opt for return of the property or judgment for its value. *See id.* §§ 643.17, .19. The value of the property is to be estimated as of the date when possession was wrongfully taken, or at least from the date when the replevin action was filed. *See Sheffield v. Hanna*, 114 N.W. 24, 27 (Iowa 1907). Although "value" is not defined in the replevin statute, we believe the measure of damages is the fair and reasonable market value of the property at the time of the taking. *See Murray v. Conrad*, 346 N.W.2d 814, 821 (Iowa 1984) (applying general rule to conversion case).

No evidence of the fair market value of the van was presented at trial. At that time, over two years had passed since Pulliam purchased the 2000 van for $1500. In the meantime, the van sustained flood damage, was repaired, and had been stored outdoors for extended periods of time. At the end of the trial, the magistrate recognized he could not order the return of a missing vehicle, so he had to come up with a value. The court suggested the value Pulliam used for

registration purposes, and Danny Macs's counsel responded, "That's fine with me." Then, the court inquired as to what Pulliam paid for the van, and Pulliam's counsel said, "$1500 she paid for it." The court said, "OK," and Danny Macs's counsel said, "Yes." Then Pulliam's counsel stated there were approximately $1600 in repairs. The court responded, "Okay, Got it. That's where you came up with the [$3000 valuation]. Okay." There was no further response from counsel for Danny Macs.

Finding that Danny Macs did not object to the $3000 amount for the value of the van, the magistrate entered judgment in favor of Pulliam and against Danny Macs in that amount. On appeal, the DAJ noted the only error in the magistrate's ruling concerned the value of the van. The DAJ stated the correct value of the van would be the value at the time it was taken. However, the DAJ found the magistrate "addressed this matter with counsel at the conclusion of the hearing and both parties agreed the property would be valued at $3000."

Upon our review, we conclude the evidence does not support a finding the parties stipulated to a value of $3000 for the van. Nor does the evidence support a finding that the van was worth $3000. Danny Macs suggests that we remand for a hearing on damages and that "Pulliam should be ordered to present licensing documents from the Treasurer's Office as stipulated by the parties, with damages set at the amount stated on the documents obtained from the Treasurer's Office, not to exceed the $1500 purchase price of the vehicle as stated in Pulliam's testimony."[13] We find it unnecessary to order a remand for

---

[13] The purchase price of the van is not reflected on the registration receipt in evidence.

such fact-finding, which would no doubt subject the parties to additional attorney fees and costs and would expend additional limited judicial resources.

Here, the testimony was that Pulliam paid $1500 for the van.  Danny Macs did not dispute this figure at trial.  The $1600 Pulliam paid in repairs did not increase the value of the van.  At best, the repairs put the van back to its condition prior to the flood.  Consequently, the magistrate erred as a matter of law in entering judgment in favor of Pulliam for $3000 and in not entering judgment in the amount of $1500, the value of the vehicle at the time it was wrongfully possessed.

### IV.  Conclusion.

Because the magistrate erred in entering judgment in favor of Pulliam for $3000, we vacate that portion of the DAJ's order affirming the $3000 judgment in favor of Pulliam and against Danny Macs.  We remand for entry of an amended judgment in the amount of $1500.  We affirm in all other respects.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**